**2020 UT App 136**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
FRANK VAL MODES,
Appellant.

Amended Opinion[1]
No. 20180265-CA
Filed October 1, 2020

Third District Court, Salt Lake Department
The Honorable Keith A. Kelly
No. 161912922

Gregory G. Skordas, Kaytlin V. Beckett, and Gabriela
Mena, Attorneys for Appellant

Sean D. Reyes and Lindsey L. Wheeler, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     Frank Val Modes was convicted of aggravated sexual abuse of a child (Victim). He appeals, alleging that the trial court erred by admitting evidence that he had previously committed

---

1. This Amended Opinion replaces the Opinion in Case No. 20180265-CA issued on March 12, 2020. After our opinion issued, the State of Utah filed a petition for rehearing, and we called for a response. We grant the petition for the purpose of clarifying the deficient performance standard in paragraph 25.

acts of child molestation and that his trial counsel was ineffective. We affirm.

BACKGROUND

¶2 Modes was Victim's uncle through marriage; his wife (Wife) and Victim's mother (Mother) are sisters.[2] Modes was also the "best friend" and a cousin of Victim's father (Father).

¶3 In the early 2000s, Modes and Wife operated a licensed daycare in their home. While Wife managed the day-to-day operation of the daycare, Modes was occasionally left alone with the children during naptime. From around 2000—when Victim was five months old—until 2004, Victim attended Wife's daycare. When Victim was four years old and at the daycare, Modes woke her and other young girls from their nap and forced them to take off their shirts and lie down together. Modes then exposed his penis, touched the girls, and masturbated. Victim further revealed how Modes abused her in private at the daycare: "Sometimes I'd wake up from nap and he'd be lying next to me masturbating again, to the point where the bed was shaking and I could hear the bunk beds squeaking. And sometimes he'd slide his hands inside my pants and stick a finger inside of . . . [m]y vagina." In describing this abuse, she said, "It hurt, but I was just scared. I would just [lie] there and look . . . around the room or focus on the lines on top of the bunk bed."

---

2. "We recite the facts in the light most favorable to the trial court's findings and verdict. We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Miller*, 2017 UT App 171, ¶ 2 n.1, 405 P.3d 860 (quotation simplified).

¶4 Victim recalls being "scared" to tell anybody about what Modes was doing to her. But Mother noticed a change in Victim's behavior when Victim was about three or four years old and she began to act out sexually at her house. Mother suspected that "somebody was showing her that or teaching her something." About this same time, Mother became aware that Modes had been accused of molesting two other girls in the daycare. At that point, Mother removed Victim from the daycare.

¶5 Growing up, Victim experienced a number of emotional and physical problems, including vomiting, shaking, hyperventilating, difficulty communicating with strangers, "always looking over her shoulder," night terrors, and fear of being alone with men. Because Wife used bleach to clean the daycare's floors, Victim said that the odor of bleach "[brought] up those feelings" and "memories" of being abused and made her "feel sick." Victim reported the abuse some years later—when she was fourteen years old—to Mother and to a counselor. The abuse was then reported to the police, and an investigation ensued.[3]

¶6 In October 2014, a detective interviewed Victim at the Children's Justice Center (CJC). When the detective asked about the abuse, Victim "put her head down, looked at the floor and she became embarrassed. She wasn't able to really continue talking. . . . She started crying." The detective ended the interview. Two years later, a second detective conducted another

---

3. In responding to Modes's attorney when he asked Victim why "she waited ten or more years to raise this issue" of the abuse, Victim revealed, "I was scared. He was close to the family and it would just throw things in a whirl, I thought. I was scared that I would have to face someone like you who would protect someone like him. I was scared of many things."

interview with Victim at the CJC. He testified that Victim "began to cry" and her "voice began to crackle" as she told him about the abuse. Modes was charged with aggravated sexual abuse of a child.

¶7 At trial, pursuant to rule 404(c) of the Utah Rules of Evidence, the State presented evidence that Modes had previously molested another child (Prior Victim) at the daycare. In addition to admitting into evidence a certified copy of Modes's conviction of sexual battery for his abuse of Prior Victim, Prior Victim testified. Prior Victim stated that she had attended Wife's daycare when she was six or seven years old and that she called Modes "Uncle Frank" despite being unrelated to him. She further revealed that Modes would call her "his girlfriend . . . to make [her] feel special." Prior Victim revealed that Modes made her sit on his lap, close her eyes, and stick her fingers in her mouth. Modes also made her straddle his hips with her legs and put her hands around his shoulders as he moved his hips and put "his private parts up against [her private parts]." Prior Victim testified that Modes unbuttoned his pants and tugged at her pants while he engaged in this abusive behavior. She revealed that this happened "a couple of times." Prior Victim also described another incident in which Modes derived a "sick pleasure" from making her lie down with a boy at the daycare and "kiss" and "make out" with him. When Prior Victim told Modes that she did not want to do that, he said, "[Y]ou need to do it for your uncle."

¶8 At the close of the State's case, Modes moved for a directed verdict to dismiss the charge, arguing that the State had failed to establish a "timeline" of "when the abuse took place" or "anything specific upon which to convict" Modes. The State responded that a date and time were not elements of the offense, and therefore any lack of specificity about when the abuse occurred did not require dismissal of the charges. The trial court agreed with the State and denied the motion.

¶9     At trial, Modes's defense consisted of denying that he abused Victim. He asserted that he was not living at the house where the daycare was located when the abuse allegedly occurred, that he was never alone with the children in the daycare, and that at the time of the alleged abuse, he had a back injury that prevented him from lifting more than ten pounds.

¶10    The trial court, in a bench trial, found Modes guilty as charged. Specifically, the court found the testimonies of Victim, Mother, Prior Victim, and other prosecution witnesses credible and Modes's testimony not credible. In its conclusions of law, the court stated that Modes occupied a position of trust in relation to Victim, took indecent liberties with and touched the genitalia of Victim with the intent to gratify his sexual desire, caused Victim pain by digitally penetrating her vagina, and had previously been convicted of sexual battery. The court sentenced Modes to a prison term of fifteen years to life for aggravated sexual abuse of a child. Modes appeals.

ISSUES AND STANDARDS OF REVIEW

¶11    We first address whether the court erred in admitting the details of Modes's prior acts of child molestation, including testimony of Prior Victim, pursuant to rule 404(c) of the Utah Rules of Evidence. Because no objection was made at trial, we review this issue for plain error. *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 (stating that unpreserved claims may not be raised on appeal "unless a defendant can demonstrate that exceptional circumstances exist or plain error occurred" (quotation simplified)).

¶12    We next address whether Modes's attorney performed deficiently by (1) failing to object to the admission of Prior Victim's testimony, (2) failing to cross-examine Prior Victim, and (3) not calling an expert witness on the issue of early childhood

memory recovery.[4] "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law."

---

4. Modes also claims his attorney provided ineffective assistance by not seeking to admit Victim's CJC interviews into evidence. But neither interview is part of the record on appeal, and Modes has not sought to supplement the record or sought a remand to further develop the record pursuant to rule 23B for findings necessary to determine his claim of ineffective assistance of counsel. *See* Utah R. App. P. 23B(a) ("The motion will be available only upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective."). We are unable to determine whether Modes's attorney was ineffective in this regard absent knowledge of the content of the CJC interviews. "Where the record appears inadequate in any fashion, ambiguities or deficiencies resulting therefrom simply will be construed in favor of a finding that counsel performed effectively." *State v. Litherland*, 2000 UT 76, ¶ 17, 12 P.3d 92. Thus, we decline to consider this aspect of Modes's ineffective assistance of counsel claim.

In similar fashion, Modes argues that he was denied a "fair trial through effective assistance of counsel" because his attorney did not "call any witnesses or provide any evidence" on Modes's behalf. But Modes has not identified what witnesses should have been called or what evidence his attorney should have sought to admit on his behalf, nor has he sought to supplement the record with such information. Accordingly, Modes has failed to sufficiently develop his argument, and we decline to consider this aspect of his claim of ineffective assistance. *See State v. Curtis*, 2013 UT App 287, ¶ 42, 317 P.3d 968 ("Without nonspeculative evidence establishing what each witness could have testified to at trial, [the defendant] has not shown that any deficient performance by trial counsel in failing

(continued…)

*State v. Reyos*, 2018 UT App 134, ¶ 11, 427 P.3d 1203 (quotation simplified).[5]

_____

(…continued)
to interview them was so serious that it deprived him of a fair trial, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (quotation simplified)).

5. Modes raises two other issues on appeal. First, he contends that his due process rights were violated because the criminal information did not provide adequate notice of when the claimed sexual abuse of a minor occurred. Modes argues that his motion for a directed verdict was sufficient to preserve this claim, but he is mistaken. Even if it could be argued that the information was constitutionally insufficient because it did not refer to specific dates of the alleged sexual abuse, Modes cannot now complain, because his directed verdict motion was not timely brought to challenge the specificity of the information. Modes "made no inquiry of the prosecution regarding additional facts by way of either a bill of particulars or a demand for information under [Utah Code] section 77-14-1. And he did not raise the inadequacy of the information before trial by written motion," as required by rule 4(e) of the Utah Rules of Criminal Procedure. *See State v. Fulton*, 742 P.2d 1208, 1215 (Utah 1987) (quotation simplified); *see also* Utah Code Ann. § 77-14-1 (LexisNexis 2017) ("The prosecuting attorney, on timely written demand of the defendant, shall within 10 days, or such other time as the court may allow, specify in writing as particularly as is known to him the place, date and time of the commission of the offense charged."); Utah R. Crim. P. 4(e) ("When facts not set out in an information are required to inform a defendant of the nature and cause of the offense charged, so as to enable the defendant to prepare a defense, the defendant may file a written

(continued…)

(…continued)
motion for a bill of particulars. The motion shall be filed at arraignment or within 14 days thereafter, or at such later time as the court may permit.").

In addition to being untimely, Modes's directed verdict motion did not address the particularity or specificity of the information. Modes's counsel, in the directed verdict motion presented *after* the State's case-in-chief, asserted only that the State failed to present sufficient evidence for conviction: "We just don't have anything specific upon which to convict Mr. Modes in this particular case." Thus, Modes's directed verdict motion was not specifically *about* the adequacy of the information. Rather, it was directed to a broader issue, namely, whether the State had presented sufficient evidence at trial to prove when the sexual abuse occurred. Indeed, the trial court articulated Modes's motion in such terms: "The issue right now is whether sufficient evidence was presented to allow the case to go forward and require the defense to put on a defense."

Thus, Modes failed to preserve his challenge to the lack of specificity in the information. He also has not sought review of this issue through an exception to preservation, such as plain error, ineffective assistance of counsel, or exceptional circumstances. *See State v. Johnson*, 2017 UT 76, ¶ 19, 416 P.3d 443. Because he has not done so, we decline to consider this issue. *See id.* ¶ 14 ("If the parties fail to raise an issue in either the trial or appellate court, they risk losing the opportunity to have the court address that issue." (quotation simplified)).

Second, Modes seeks reversal pursuant to the cumulative error doctrine. Because we conclude that there are "no errors to accumulate here, . . . the cumulative error doctrine [is] inapplicable in this case." *State v. Galindo*, 2019 UT App 171, ¶ 17 n.4, 452 P.3d 519, *petition for cert. filed*, Dec. 18, 2019 (No. 20191057).

ANALYSIS

I. Prior Sexual Abuse Evidence

¶13     Modes argues that the trial court plainly erred when it admitted the testimony of Prior Victim pursuant to rule 404(c) of the Utah Rules of Evidence and that this evidence was unfairly prejudicial. To prevail on this unpreserved claim, *see supra* ¶ 11, Modes must demonstrate plain error by establishing that "(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful. If any one of these requirements is not met, plain error is not established." *State v. Johnson*, 2017 UT 76, ¶ 20, 416 P.3d 443 (quotation simplified).

¶14     As a general rule, evidence of a person's other acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." Utah R. Evid. 404(b)(1). For evidence of other acts to be admissible pursuant to rule 404(b), the State must articulate a nonpropensity purpose for the evidence. *State v. Fredrick*, 2019 UT App 152, ¶ 41, 450 P.3d 1154. But this limitation does not apply in child molestation cases, where rule 404(c) applies. "The drafters of our rules of evidence have determined, as a policy matter, that propensity evidence in child molestation cases can come in on its own terms, as propensity evidence, even if there is no other plausible or avowed purpose for such evidence." *Id.* ¶ 42. And the Utah Rules of Evidence provide that when a "defendant is accused of child molestation, the court may admit evidence that the defendant committed any other acts of child molestation to prove a propensity to commit the crime charged." Utah R. Evid. 404(c)(1).

¶15     Modes asserts that Prior Victim's testimony contained "extraneous and inflammatory details . . . not contemplated under [rule] 404(c)." Relying on *State v. Cuttler*, 2015 UT 95, 367 P.3d 981, Modes argues that the trial court erred in allowing

Prior Victim to testify in "graphic detail" about the abuse she suffered at the hands of Modes, asserting that Prior Victim's testimony went "far beyond the scope of propensity" and was thus "improper and inherently prejudicial" and "served no other purpose . . . than prejudicing" him. But Modes does not identify which statements of Prior Victim should not have been admitted; rather, he argues that "[n]one of [Prior Victim's] statements were necessary to the admission of evidence under 404(c) or properly admissible under 404(c)." Thus from Modes's perspective, evidence of his acts of prior molestation should have been limited to his record conviction for sexual battery.[6]

¶16    Modes's characterization of *Cuttler* is too broad. In *Cuttler*, our supreme court was more nuanced, stating that when rule 404(c) evidence is introduced a court may mitigate the potential for unfair prejudice by limiting the evidence about a previous conviction for child molestation "to that which shows the defendant's propensity for child molestation, rather than include unnecessary and emotionally charged details about the abuse, such as other accompanying physical abuse." 2015 UT 95, ¶ 27. Far from prohibiting the admission of any details of previous acts of child molestation, *Cuttler* clarified that any such details must be directed toward showing propensity. We take this opportunity to clarify the parameters of admissibility allowed by rule 404(c).

¶17    First, rule 404(c) itself contemplates admission of more than simply the fact that a previous conviction exists; rather, the rule allows the admission of "evidence that the defendant committed any other acts of child molestation to prove a propensity to commit the crime charged." Utah R. Evid. 404(c)(1). Indeed, the rule does not require that a defendant be

---

6. We note that Modes's prior conviction was identified as an aggravating circumstance in the information and during trial.

convicted of a crime for the associated other-acts evidence to be admissible. That is, the ultimate legal disposition of a previous act of child molestation is largely irrelevant to whether the evidence is admissible under rule 404(c). What is relevant is whether the defendant committed other acts that show his propensity to molest children. In short, the rule addresses evidence that the defendant *committed* previous acts of child molestation, and it is not necessarily concerned with whether the defendant was ever previously *convicted* for any such acts.[7]

¶18    Second, rule 404(c) contemplates that the fact-finder will need to evaluate the admitted evidence to determine the extent to which it supports the notion that the defendant has a propensity to molest children. In order to meaningfully assess the appropriate weight to afford such evidence, the fact-finder will need to hear and consider at least some of the details of the previous acts. For instance, the more similar a previous act is to the act the defendant is accused of committing, the more commission of a previous act might suggest propensity. *See State v. Ring*, 2018 UT 19, ¶ 30, 424 P.3d 845 (stating that other acts of child sexual abuse that are "significantly similar as to the age of

---

7. Prior to the admission of a defendant's other acts in a rule 404(c) context, the court is required to make a legal determination that the child was under fourteen and that an act of child molestation has occurred pursuant to Utah law. *See* Utah R. Evid. 404(c)(1). ("In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other acts of *child molestation* to prove a propensity to commit the crime charged." (emphasis added)); *id.* R. 404(c)(3) (defining "child molestation" as "an act committed in relation to a child under the age of 14 which would, if committed in this state, be a sexual offense or an attempt to commit a sexual offense").

the victim, the setting, the opportunity, and [the defendant's] modus operandi . . . suggest that [a defendant had] the propensity to commit the alleged crime").

¶19   In this case, Modes argues that none of the details revealed in Prior Victim's testimony should have been admitted at his trial. But this position is untenable, because such selective admission of evidence would run contrary to the very purpose of rule 404(c). In this case, Modes's previous conviction was for sexual battery, a crime that can take many forms and that does not necessarily involve child victims. In order to assess the evidentiary weight of that evidence as it relates to Modes's propensity to commit acts of child molestation, the fact-finder needed to learn at least some details of the act that led to the prior conviction. Without any such detail, the fact-finder would not have been able to link Modes's past behavior to the sexual molestation of a child or to evaluate whether Modes has a propensity to molest children, as required by rule 404(c). In short, without the sufficient degree of detail, the rule becomes inoperable.

¶20   Moreover, Modes has not pointed out which details contained in Prior Victim's testimony went beyond what was necessary to show that his past conduct involved molestation of a child or that he has a propensity to molest children. He merely asserts that the "graphic details of [Prior Victim's] uncontroverted testimony undoubtedly influenced the ultimate outcome." And when asked at oral argument to delineate between which facts of the prior abuse would have been allowable and which facts would not, Modes's counsel was unable to make the distinction. Such a failure to articulate between allowable facts and those which are outside the bounds of the trial court's discretion constitutes a failure to meet the burden of persuasion. *See State v. Fredrick*, 2019 UT App 152, ¶ 49, 450 P.3d 1154 (stating that a defendant could argue that evidence should be "admitted in a more sanitized fashion,

somehow allowing the jury to learn of the previous incidents without unnecessary contextual details"). In our view, the details that Prior Victim shared were relevant to establishing that Modes had molested a child in the past and that he has a propensity to molest children—the very purpose of rule 404(c). Without these details, the court would have had before it only Modes's prior record of conviction for misdemeanor sexual battery. Such scant record evidence is not enough to fulfill the purpose of rule 404(c). While Modes was previously convicted of sexual battery, the bare record of that conviction contains insufficient detail to allow the fact-finder to determine whether the prior acts gave rise to a propensity inference in this case. Thus, the details supplied by Prior Victim were necessary to provide the context for Modes's previous conviction.[8]

¶21 We also conclude that the testimony of Prior Victim was not unfairly prejudicial, because Modes has not articulated any prejudice beyond the fact that the evidence showed a propensity to molest children, a purpose for which it was explicitly

---

8. In addition, *Cuttler*'s analysis was in the context of a jury trial. *See State v. Cuttler*, 2015 UT 95, ¶ 27, 367 P.3d 981 (stating that rule 404(c) allows the State to bring evidence of prior child molestation acts "while not presenting the *jury* with inflammatory details beyond what is necessary or appropriate for it to consider when drawing that propensity inference" (emphasis added)). Here, Modes was convicted after a bench trial. Thus any prejudicial effect of the testimony was naturally minimized by the absence of a jury. *See State v. Real Prop. at 633 E. 640 N., Orem*, 942 P.2d 925, 930 (Utah 1997) ("When weighing the probativeness of the evidence against the possible prejudice, we must take into consideration the fact that the trial was to the bench, not to a jury. The evil that rule 403 is intended to combat, unfair prejudice, is primarily of concern during a jury trial.").

admissible. *See* Utah R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ."); *see also Ring*, 2018 UT 19, ¶ 28 ("[B]efore the court admits [rule 404(c)] evidence, it must weigh the evidence's probative value against its potential for prejudice under rule 403.") "[T]he prejudice analysis under rule 403—when associated with rule 404(c)—focuses on prejudice other than the fact that the evidence shows propensity to engage in reprehensible behavior involving children." *Fredrick*, 2019 UT App 152, ¶ 53 (Mortensen, J., concurring); *see also State v. Cuttler*, 2015 UT 95, ¶ 26, 367 P.3d 981 ("Rule 404(c)(1) explicitly allows [previous child molestation] evidence for the purpose of proving a defendant's propensity to commit the child molestation with which he is charged." (quotation simplified)); *State v. Lintzen*, 2015 UT App 68, ¶ 17, 347 P.3d 433 ("After rule 404(c), the accused's propensity is the reason for admission and no longer constitutes unfair prejudice." (quotation simplified)). To establish prejudice in a rule 404(c) context, a defendant would have to show that the evidence demonstrates something apart from the act of sexual molestation of a child—"unnecessary and emotionally charged details about the abuse, such as other accompanying physical abuse." *Cuttler*, 2015 UT 95, ¶ 27.

¶22 Here, the admission of the evidence that Modes had sexually molested a child in the past helped establish that he had a "propensity" to molest children. *See Fredrick*, 2019 UT App 152, ¶ 53 (Mortensen, J., concurring). And showing such propensity to molest children—in contrast to the general prohibition against admitting other acts evidence to show propensity—is the very purpose of rule 404(c), which explicitly states that "the court may admit evidence that the defendant committed any other acts of child molestation to prove a *propensity* to commit the crime charged." Utah R. Evid. 404(c)(1) (emphasis added). Modes's "prior acts were highly probative in this case because

they were significantly similar as to the age of the victim, the setting, the opportunity, and [Modes's] modus operandi. These similarities suggest that he had the propensity to commit the alleged crime." *See Ring*, 2018 UT 19, ¶ 30.

¶23   Modes has also made no attempt to demonstrate that the admission of the details surrounding his previous act of child sexual molestation prejudiced him in some other way. He merely states that the details of Prior Victim's testimony "undoubtedly influenced the ultimate outcome." While he is likely correct in this assertion, the point is not persuasive in a rule 404(c) context, because prejudice arising solely from a propensity inference is permissible. Indeed as our supreme court has stated, "[r]ule 404(c)'s only function is to admit evidence of prior child sex crimes. Therefore, ruling as [Modes] suggests would render rule 404(c) inoperative—an outcome we refuse to endorse." *See id*. In short, Modes's claim that the court plainly erred in admitting details of his prior conviction for child sexual molestation fails because he has not shown how the details of the abuse were "unnecessary and emotionally charged . . . beyond what is necessary or appropriate for [the court] to consider when drawing [a rule 404(c)] propensity inference." *Cuttler*, 2015 UT 95, ¶ 27.

¶24   Thus, we conclude that the trial court did not plainly err in admitting the testimony of Prior Victim, because the details she shared established only that Modes (1) molested a child in the past and (2) likely had a propensity to molest children, *see* Utah R. Evid. 404(c), and were therefore not obviously unfairly prejudicial, *see id*. R. 403.

## II. Ineffective Assistance of Counsel

¶25   Modes's second claim is that his attorney provided ineffective assistance by (1) failing to object to the admission of Prior Victim's testimony, (2) failing to cross-examine Prior

Victim, and (3) not calling an expert witness in the issue of early childhood memory recovery. To establish that his attorney provided ineffective assistance, Modes must prove that his counsel performed deficiently and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Because failure to establish either prong of the test is fatal to an ineffective assistance of counsel claim, we are free to address [Modes's] claims under either prong." *See Honie v. State*, 2014 UT 19, ¶ 31, 342 P.3d 182. To succeed on the first prong, Modes must overcome the presumption that an attorney's decision "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The court gives trial counsel wide latitude in making tactical decisions and will not question such decisions unless there is no reasonable basis supporting them." *See State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (quotation simplified). Moreover, "the question of deficient performance is not whether some strategy other than the one that counsel employed looks superior given the actual results of trial. It is whether a reasonable, competent lawyer could have chosen the strategy that was employed in the real-time context of trial." *State v. Nelson*, 2015 UT 62, ¶ 14, 355 P.3d 1031 (quotation simplified). And "even where a court cannot conceive of a sound strategic reason for counsel's challenged conduct, it does not automatically follow that counsel was deficient. . . . [T]he ultimate question is always whether, considering all the circumstances, counsel's acts or omissions were objectively unreasonable." *State v. Scott*, 2020 UT 13, ¶ 36, 462 P.3d 350; *see also State v. Ray*, 2020 UT 12, ¶¶ 34–36.

¶26    Modes first argues that his trial counsel performed deficiently for not objecting to the admission of Prior Victim's testimony. As we explained, *supra* ¶¶ 20–21, Prior Victim's testimony could properly be admitted to demonstrate that Modes's prior conviction qualified as an act of child molestation to show his propensity to molest children, *see* Utah R. Evid.

404(c), so any objection that the testimony was inadmissible under rule 404(c) would not have succeeded. In addition, as we explained, *supra* ¶¶ 22–24, Modes has not demonstrated that the details relayed by Prior Victim of Modes's abuse of her were inflammatory or unfairly prejudicial, because such evidence was relevant to demonstrate Modes's propensity to molest children. And it is well-established that the "[f]ailure to raise futile objections does not constitute ineffective assistance of counsel." *State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546; *see also State v. Ringstad*, 2018 UT App 66, ¶ 76, 424 P.3d 1052; *State v. Christensen*, 2014 UT App 166, ¶ 18, 331 P.3d 1128.

¶27    With regard to the second ineffective assistance claim, counsel may have concluded that cross-examining Prior Victim would have done more harm than good to Modes. *See State v. King*, 2010 UT App 396, ¶ 49, 248 P.3d 984 ("[A]ttorneys may opt to forgo cross-examination of witnesses for valid strategic reasons."). For example, counsel may have feared that cross-examining Prior Victim would have revealed more damaging details about the past abuse conviction and further evidence about the similarity of the two incidents of abuse. *See State v. Arriaga*, 2012 UT App 295, ¶ 21, 288 P.3d 588 (stating that not cross-examining a victim is a reasonable strategy to "avoid rehashing the dirty details of the victim's testimony in order to point out a few minor inconsistencies here and there"); *State v. Strain*, 885 P.2d 810, 815 (Utah Ct. App. 1994) (stating that forgoing cross-examination is a legitimate trial strategy to avoid giving a witness the opportunity to "bolster[] his testimony with further detail").

¶28    Lastly, Modes argues that counsel was deficient in failing to consult a memory expert, asserting that counsel's "failure to inquire about [the] tender age of [Victim] and its impact on memory recall, or the limited capacity of a child under two years of age to recall such facts, would have clearly impacted the evidentiary picture." However,

"counsel's decision to call or not to call an expert witness is a matter of trial strategy, which will not be questioned and viewed as ineffectiveness unless there is no reasonable basis for that decision." *State v. Tyler*, 850 P.2d 1250, 1256 (Utah 1993); *accord State v. Walker*, 2010 UT App 157, ¶ 14, 235 P.3d 766. Apart from the unsupported allegation that counsel did not consult a memory expert, Modes offers no evidence that counsel did not investigate or consider whether a memory expert would have been useful to the defense.[9] Counsel may reasonably have concluded that through cross-examination, he could reveal weaknesses in Victim's ability to recall events that had happened to her as a child and so expose any inaccuracies in her testimony. Thus, counsel may have determined that a memory expert would not have materially added to undermining the accuracy of Victim's testimony.[10]

---

9. Modes has not sought remand pursuant to rule 23B to include an affidavit from any expert proffering the proposed expert testimony he would have introduced at trial, and therefore he cannot demonstrate prejudice by showing that such expert testimony would have helped his defense.

10. Citing *Landry v. State*, 2016 UT App 164, 380 P.3d 25, Modes argues that counsel was required to seek out expert guidance on difficult issues. *Landry* states,

> Although we are generally reluctant to question trial strategy, including whether to call an expert witness, where there is no reasonable basis for that decision, we will conclude there was deficient performance by trial counsel. The specific facts of a case may require trial counsel to investigate potential witnesses to determine whether such testimony would be appropriate.

(continued…)

¶29 Accordingly, we conclude that Modes has failed to show that his counsel rendered deficient representation.

CONCLUSION

¶30 We conclude that the trial court did not plainly err in admitting the testimony of Prior Victim and that Modes's counsel did not provide ineffective assistance.

¶31 Affirmed.

―――――――――

(…continued)

*Id.* ¶ 32 (quotation simplified). In citing *Landry*, Modes fails to note that the case involved a charge of first-degree-felony arson and that counsel for the defendant had no prior experience or training defending someone charged with arson. *See id.* ¶¶ 6, 34. Here, there is nothing in the record to suggest that Modes's attorney was similarly inexperienced in the area of memory recall. In addition, the arson investigation in *Landry* presented an issue requiring some degree of scientific expertise, and Modes makes no argument that the issue of memory recall requires similar expert guidance or that it cannot be addressed through competent cross-examination. Thus, *Landry* is readily distinguishable from the case at hand.