**2025 UT App 188**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
KASSIE ANGEL TOLMAN,
Appellant.

Opinion
No. 20230006-CA
Filed December 18, 2025

First District Court, Logan Department
The Honorable Angela Fonnesbeck
No. 191100466

Lyla Mahmoud, Debra M. Nelson, and
Benjamin Miller, Attorneys for Appellant

Derek E. Brown and Karen A. Klucznik,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN D. TENNEY
concurred.

ORME, Judge:

¶1　Kassie Angel Tolman was convicted of child abuse after a physical altercation that left her son (Son) injured. On appeal, she argues that Son and his two younger siblings should not have been permitted to testify outside of her immediate presence at trial. Further, she argues her defense counsel (Counsel) provided ineffective assistance in failing to object to what she views as impermissible other-acts and hearsay evidence. We disagree with Tolman's claims and affirm.

## BACKGROUND[1]

¶2    In 2019, ten-year-old Son was at Tolman's apartment one day for parent-time when Tolman suddenly became angry and "just came after" him. Son ran down the hall into a bedroom as Tolman followed, hitting him and pushing him down to the floor. Tolman "started stomping" on Son's head and left the room only to come back with a bag of frozen pizza rolls, which she used to hit Son in the head and chest. Son's younger sister (Sister) and brother (Brother) were also at the apartment that day and witnessed the beating.

¶3    Tolman then called her grandparents—Son's great-grandparents—and asked them to pick Son up. Son was "bawling," "shaking," and "traumatized," and after observing bruises on Son's face, ear, and head, the great-grandparents called the police. A detective (Detective) documented Son's injuries the next day. Detective also set up interviews for Son, Sister, and Brother at the Children's Justice Center (CJC). Though Detective did not conduct the CJC interviews himself, he observed them as they took place in a different room. Based on the information the children disclosed, Tolman was charged with one count of child abuse.

¶4    Prior to trial, the State sought to admit a past child abuse conviction involving a 2017 incident wherein Tolman hit Son with her fists and a metal hanger and told him that she hated him. The State argued that this prior conviction should be admitted for the proper, non-character purpose of proving Tolman's motive in abusing Son in this case. The district court disagreed, concluding the evidence would not be offered for a proper non-character

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Brown*, 2025 UT App 31, n.1, 566 P.3d 737 (quotation simplified).

purpose. The court explained, "The admission of evidence related to a prior act certainly suggests that I would be admitting it for purposes of suggesting that the defendant is acting in conformity with that prior bad act, and I just don't see any limiting way that I could possibly correct that through jury instructions." Thus, the court denied the State's motion to admit Tolman's prior conviction.

¶5     At trial, the prosecutor requested that Son, Sister, and Brother each be allowed to testify outside of Tolman's presence. The prosecutor noted that Son was comfortable testifying in front of the jury but asked that Sister and Brother testify "in a smaller setting, not in the courtroom," stating, "All three of them, I think, would like to have the defendant able to view but not [be] present when that takes place." When asked whether he had any objection, Counsel responded,

> I'm not objecting to the recommended ways of carrying that out, I just think that there would need to be some leeway in allowing me to periodically pause in cross-examination to meet with my client to make sure that I'm addressing issues that she's raising as she watches that. That would be the only concern that I would have with what's being presented.

The court then proposed that Son testify in the courtroom before the jury and that Sister and Brother testify in a different courtroom, with the jury able to view their testimony remotely. The court arranged for Tolman to watch each child's testimony from a private room on a different floor of the courthouse. The court assured Counsel that it would offer breaks during cross-examination to allow him to "follow up with" Tolman. Counsel did in fact have several opportunities to pause and consult with Tolman during cross-examination of the children.

¶6     Son testified that he had been sitting on the couch, playing a guitar, when Tolman got "angry" and came after him, hitting him and "stomping" on his head while wearing a pair of black boots with heels. He testified that Tolman left the room and came back with a bag of frozen pizza rolls, which she then used to hit him on his head and chest. Son testified about being left with injuries to his ear, face, head, and back.

¶7     During Son's testimony, the prosecutor asked, "Have there been other times where your mom has done things to you?" Son answered, "Yes," and recounted the 2017 abuse that the court had previously excluded.[2] He stated, "[S]he put a blanket in my mouth so I couldn't yell . . . and started hitting me with the hanger." Son also testified that Tolman told him that she hated him. The prosecutor asked the court to take judicial notice of Tolman's conviction based on this prior incident of abuse. Counsel did not object. During cross-examination, Counsel asked Son about various violent incidents he had been involved in at school.

¶8     Sister testified from another courtroom, with her testimony broadcast by video to the jury and to Tolman. She testified that she and Brother had gotten out of the shower and were in the hallway of the apartment when she saw Tolman standing in the doorway of the children's bedroom while Son lay on the floor. She testified that she saw Tolman "hurting" Son, hitting him with frozen pizza rolls. And she testified that Tolman was wearing slippers that were "all black." At one point during Sister's testimony, the court told Tolman that "counsel has stipulated at this time that your video be turned off. You will still be able to see us and hear us, but we won't be able to see you at this moment."

---

2. As later explained by Counsel on the record, the admission of this evidence appears to have been the result of an agreement reached during an in-chambers discussion that took place earlier that morning. *See infra* ¶ 10.

¶9 Brother testified under the same conditions as Sister. He stated that when he and Sister left the bathroom that day, they saw an upset Tolman kicking Son and hitting him with frozen pizza rolls.

¶10 After a recess, Counsel made the following statement:

> We just want to make sure we put on the record that there was a conversation in chambers earlier this morning involving counsel for the State and the defendant and the Court wherein some potential evidence that I intended to possibly bring up in cross-examination of the victim, was going to implicate 404(a). And as part of that conversation the State pointed out that under that rule, if I were to proceed down that road, it would be opening the door for them to introduce evidence that would normally, potentially be precluded under rule 404(a) and 404(b), but that they would then be able to bring that information up. I agree that that's the proper interpretation of the rule.
>
> Had a consultation with my client and after that consultation, it was concluded that we would proceed with our cross-examination as planned.

¶11 The trial then proceeded with Detective's testimony about observing the children's CJC interviews from outside the interview room. When the prosecutor asked Detective whether Son testified at trial consistently with the statements made in his CJC interview, Counsel objected on relevance grounds. The court overruled the objection, and Detective opined that Son had testified at trial consistently with his CJC interview. The prosecutor then asked Detective about certain statements Sister made during her CJC interview that she was unable to recall at trial. Detective testified that during her

interview, Sister stated that she saw Tolman "get mad" at Son because he was playing a guitar, that Tolman "hit" Son with her shoe and "put him in his room," that Son had been "thrown to the ground," and that Tolman hit both Son and Sister with a bag of frozen food.

¶12     The prosecutor then asked Detective whether Brother's testimony at trial was "more consistent with" Son's trial testimony or with Brother's CJC interview. Counsel again objected on relevance grounds, but the court overruled the objection. And after the prosecutor rephrased the question, Counsel raised a third relevance objection, which the court also overruled. Detective then answered that Brother's trial testimony was "more consistent" with his CJC interview than with Son's trial testimony. And Detective testified that during Brother's interview, he disclosed that Tolman got mad at Son because he said the "f word," that Tolman hit Son with her shoe and the bag of pizza rolls while Son was in the bedroom, and that Tolman also hit Sister with the bag of pizza rolls.

¶13     Tolman testified in her own defense. She stated that Son was prone to "outbursts" and "fits of anger" and that on the day of the incident, Son had been physically fighting with Sister. She testified that she tried to separate the children by telling Son to go to his bedroom, and while she denied pushing Son to the ground, she admitted that there was "a physical struggle trying to get him into his room." Tolman also denied kicking or stomping on Son and stated that she could not have worn the black boots with heels Son mentioned because she was eight months pregnant at the time. She also denied hitting Son with the frozen pizza rolls, saying, "I don't recall any of this happening." On cross-examination, Tolman testified about her prior child abuse conviction, maintaining that on the occasion giving rise to that charge she had also been trying to separate Son from Sister after a physical altercation that left Sister with a bloody nose.

¶14   During closing arguments, the prosecutor told the jury,

> You heard testimony in this case of a prior conviction for child abuse that [Tolman] has and that in that case, [Son] told you, he testified that [Tolman] has told him that she hates him. That may be motive. That may help you decide whether she acted intentionally in this case, this alleged incident of child abuse.

The jury found Tolman guilty of child abuse.

ISSUES AND STANDARDS OF REVIEW

¶15   On appeal, Tolman argues the district court erred in allowing her children to testify outside of her immediate presence, in contravention of her constitutional right to confront the witnesses against her. Ordinarily, "whether testimony was admitted in violation of a defendant's right to confrontation is a question of law, which we review for correctness." *State v. Isom*, 2015 UT App 160, ¶ 42, 354 P.3d 791 (quotation simplified), *cert. denied*, 364 P.3d 48 (Utah 2015). But as discussed in Part I, we ultimately do not reach the merits of this issue because it was not preserved and Tolman has not argued an exception to the preservation rule.

¶16   Tolman also argues that Counsel provided ineffective assistance in: (1) stipulating to the children's remote testimony, (2) not objecting to the evidence of her prior child abuse conviction, and (3) not objecting to Detective's statements about the children's CJC interviews on hearsay grounds. "A claim of ineffective assistance raised for the first time on appeal presents a question of law," which we review for correctness. *State v. Hatch*, 2025 UT App 132, ¶ 9, 577 P.3d 903.

## ANALYSIS

### I. The Children's Testimony

¶17 Tolman takes issue with the format of her children's trial testimony. She argues that the district court allowed her children to testify outside of her immediate presence without making the proper findings under rule 15.5 of the Utah Rules of Criminal Procedure, thus violating her right to confront the children under the Sixth Amendment to the United States Constitution. *See* U.S. Const. amend. VI (providing that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against" them).

¶18 The State contends that this issue was not preserved for appeal. But Tolman takes the view that Counsel's initial objection to the format of the testimony preserved the constitutional claim she now raises. We agree with the State.

¶19 "Ordinarily, an issue must first be raised in the district court to be preserved for review on appeal." *State v. Dowhaniuk*, 2025 UT App 100, ¶ 15, 574 P.3d 1000. "The purpose of this rule is to put the district court on notice of an issue and provide it with an opportunity to rule on it." *Id.* (quotation simplified). Thus, "the issue must be *specifically* raised" to a sufficient "level of consciousness before the . . . court." *State v. Mayorga*, 2024 UT App 182, ¶ 29, 561 P.3d 1184 (emphasis in original; quotation otherwise simplified), *cert. denied*, 568 P.3d 261 (Utah 2025). And "if a party makes an objection at trial based on one ground, this objection does not preserve for appeal any alternative grounds for objection." *State v. Isom*, 2015 UT App 160, ¶ 60, 354 P.3d 791 (quotation simplified), *cert. denied*, 364 P.3d 48 (Utah 2015). This "preservation rule applies to every claim, including constitutional questions." *State v. Colwell*, 2025 UT App 59, ¶ 6, 569 P.3d 1077 (quotation simplified), *cert. denied*, 570 P.3d 663 (Utah 2025).

¶20  Here, Counsel lodged a limited objection to Tolman's remote observation of the children's testimony, stating, "I'm not objecting to the recommended ways of carrying that out, I just think that there would need to be some leeway in allowing me to periodically pause in cross-examination to meet with my client to make sure that I'm addressing issues that she's raising as she watches that." Counsel continued, "That would be the only concern that I would have with what's being presented." Counsel's objection certainly alerted the court to a potential problem under rule 15.5(b)(1)(D) of the Utah Rules of Criminal Procedure, which requires that if a child testifies outside of the defendant's presence, "the defendant has a means of two-way telephonic communication with the defendant's attorney during the child's testimony." And Tolman argues that because rule 15.5 is a "codified exception to" and thus "inextricably tied to the Confrontation Clause," this objection also preserved the confrontation issue she now raises. But again, issues must be raised with specificity to allow the district court to address them. *Mayorga*, 2024 UT App 182, ¶ 29. Counsel's "only concern" was the logistical challenge of communicating with Tolman under the proposed remote setup—not the potential confrontation issues it posed.

¶21  Thus, because Counsel's objection did not specifically raise the constitutional issue, the district court did not have notice of the issue or an opportunity to address it. As the issue has not been preserved for review and Tolman has not argued an exception to the preservation rule, we do not address it further.

## II. Ineffective Assistance of Counsel

¶22  Tolman also argues that Counsel provided ineffective assistance in stipulating to the format of the children's testimony, failing to object to evidence about Tolman's prior child abuse conviction, and failing to object to Detective's testimony about the children's CJC interviews on hearsay grounds. For each of these

claims, Tolman "must show (1) that Counsel's performance was deficient, meaning it fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced the defense, or, in other words, that there is a reasonable probability that the case would have had a different outcome absent Counsel's deficient performance." *Price City v. Buck*, 2025 UT App 129, ¶ 7, 577 P.3d 925 (quotation simplified), *cert. denied*, Dec. 5, 2025 (No. 20251328). "Because failure to establish either prong is fatal to a claim of ineffective assistance, we are free to resolve the claim under either prong." *Id*. We resolve each of Tolman's claims on the first prong.

¶23　"In evaluating the reasonableness of an attorney's performance, we often look to whether the attorney's actions were motivated by strategy." *State v. Cortez-Izarraraz*, 2025 UT App 116, ¶ 29, 575 P.3d 1240. "And while the ultimate question is not whether there was a possible strategic reason for counsel's conduct, but instead whether that conduct was objectively reasonable, if it appears counsel's actions could have been intended to further a reasonable strategy, a defendant has necessarily failed to show unreasonable performance." *Id.* (quotation simplified). Thus, Tolman "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (quotation simplified). We conclude that Tolman has not done so in any of the three claimed instances of deficient performance.

A.　Agreeing to the Format of the Children's Testimony

¶24　In the event that we reach the conclusion that Tolman has not preserved her confrontation argument, as we did above, *see supra* ¶ 21, she alternatively argues that Counsel rendered ineffective assistance in stipulating to the children testifying outside of her presence, including stipulating to Tolman turning off her video during portions of Sister's testimony, as this format

violated her right to confrontation. But we conclude that Counsel did not act unreasonably in this regard.

¶25 The United States Supreme Court has held that "the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact," but it has not declared that right to be "absolute." *State v. Henriod*, 2006 UT 11, ¶ 11, 131 P.3d 232 (quotation simplified). "If the State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying is sufficiently important to justify the use of a special procedure that permits a child witness to testify in the absence of face-to-face confrontation." *State v. Isom*, 2015 UT App 160, ¶ 48, 354 P.3d 791 (quotation simplified), *cert. denied*, 364 P.3d 48 (Utah 2015). To that end, rule 15.5 of the Utah Rules of Criminal Procedure sets out certain requirements that must be met before a child is permitted to testify outside the presence of the defendant. Tolman argues that although Counsel had already lodged one objection based on rule 15.5, he should have objected again as each child took the stand to testify. But Counsel may well have decided to forgo such objections, rule 15.5 aside, if he concluded it would be more advantageous to Tolman to allow the children to testify outside of her presence.

¶26 The State had already contended that Sister and Brother needed to testify "in a smaller setting, not in the courtroom," and that Sister, Brother, and Son "would like to have [Tolman] able to view [them] but not [be] present when" they testified. Counsel could reasonably have decided to avoid any risk of emotional display by the children if they were required to testify in Tolman's presence. And, in a similar vein, Counsel could have reasonably decided not to object to the court instructing Tolman to turn her video off, thereby avoiding emphasizing whatever caused the court to do so.

¶27   Given this conceivable strategy, we cannot conclude that Counsel acted unreasonably and, thus, deficiently in agreeing to the format of the children's testimony.

B.     Failing to Object to Other Acts Evidence

¶28   Despite the court's prior ruling excluding such evidence, during the State's examination of Son, the prosecutor asked about a previous incident in which Tolman hit Son and told him she hated him, resulting in her conviction on a prior charge of child abuse. Tolman argues that Counsel was ineffective in failing to object to this evidence under rule 404(b) of the Utah Rules of Evidence. We disagree.

¶29   Rule 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." But under rule 404(a)(2)(B), "a defendant may offer evidence of an alleged victim's pertinent trait, and if the evidence is admitted, the prosecutor may (i) offer evidence to rebut it; and (ii) offer evidence of the defendant's same trait."

¶30   Here, as explained by Counsel on the record, he chose to introduce evidence of Son's aggressive and violent nature. Counsel recognized that doing so "would be opening the door for [the State] to introduce evidence that would normally, potentially be precluded under rule 404(a) and 404(b)," including Tolman's prior child abuse conviction. Counsel stated that he had discussed this strategy with Tolman and decided to proceed with his cross-examination of Son "as planned" anyway. This was all discussed among the parties in-chambers earlier that morning. The prosecutor then asked Son about Tolman's prior abuse, absent objection. And Counsel indeed cross-examined Son about his own behavior, in furtherance of the defense strategy of portraying Son as the aggressor.

¶31 Counsel reasonably recognized that he likely would not have been able to introduce evidence of Son's aggressive nature without running the risk of the State bringing in Tolman's own prior abuse of Son. Perceiving that he could not have it both ways, Counsel reasonably refrained from objecting to the State's introduction of the prior conviction. Thus, we cannot say he performed deficiently in this regard.

C. Failing to Properly Object to Hearsay Evidence

¶32 Detective testified about some of the children's disclosures during their CJC interviews. During this testimony, Counsel made three objections based on relevance, which the court overruled. Tolman argues that Counsel should have instead objected to Detective's testimony as inadmissible hearsay. But Counsel could reasonably have forgone making such objections.

¶33 The recordings of the CJC interviews themselves would likely have been admissible under rule 15.5(a) of the Utah Rules of Criminal Procedure, which provides that in cases involving "a charge of child abuse . . . the oral statement of a victim or other witness younger than 14 years of age which was recorded prior to the filing of an information or indictment is, upon motion and for good cause shown, admissible as evidence in any court proceeding regarding the offense," provided certain conditions are met. Counsel could reasonably have concluded that had he objected to Detective's testimony on hearsay grounds, the State would have moved to admit the actual recordings of the interviews under rule 15.5(a). He could have also reasonably concluded that Detective's more general and rather brief testimony about certain statements the children made during their interviews was less prejudicial to Tolman than would be playing the recordings of the interviews themselves—with all the details the children disclosed therein—for the jury. *Cf. State v. Nunez*, 2021 UT App 86, ¶ 33, 498 P.3d 458 (recognizing that defense counsel did not perform deficiently where, when faced

with whether to "attempt to press for compliance with the permissive rule 15.5 and risk the likely outcome of having the entire interview shown to the jury, or allow only the inconsistent interview sections to come in as the court had ordered," he chose to "allow portions of the interview to prevent it from coming into evidence in its entirety"), *cert. denied*, 502 P.3d 270 (Utah 2021). Accordingly, we conclude Counsel's performance was not deficient here either.

¶34 In sum, in each of these instances, Tolman has not shown that Counsel's performance was deficient, and she has therefore not demonstrated that Counsel provided ineffective assistance.[3]

## CONCLUSION

¶35 Tolman did not preserve her constitutional argument regarding the remote format of her children's testimony. And she has not shown that Counsel was ineffective in stipulating to the format of the children's testimony and in failing to object to evidence of her prior child abuse conviction, nor in objecting to Detective's testimony about the children's CJC interviews on relevance rather than hearsay grounds. Accordingly, Tolman has not demonstrated a basis for reversal, and we affirm her conviction.

———————

3. Tolman argues that the cumulative effect of these errors requires reversal. But "because we conclude that there are no errors to accumulate here, the cumulative error doctrine is inapplicable in this case." *State v. Modes*, 2020 UT App 136, ¶ 12 n.5, 475 P.3d 153 (quotation simplified).