**2025 UT App 10**

### THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
RYAN A. ESTES,
Appellant.

Opinion
No. 20230086-CA
Filed January 24, 2025

Second District Court, Farmington Department
The Honorable Michael D. DiReda
No. 211701922

Gregory W. Stevens (briefing), Freyja Johnson, Emily
Adams, and Jessica Hyde Holzer (argued), Attorneys
for Appellant

Derek E. Brown and Michael Palumbo,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and JOHN D. LUTHY concurred.

MORTENSEN, Judge:

¶1      Ryan A. Estes sexually abused his stepdaughter in an initial encounter, and then he continued to abuse both his stepdaughter and daughter. Estes appeals his conviction related to this initial encounter, arguing that the district court should not have admitted evidence of the further abuse because the admission of the evidence violated rule 403 of the Utah Rules of Evidence—that the evidence was substantially more unfairly prejudicial than it was probative. Estes also asserts that there was insufficient evidence to support the verdict. We reject these claims and affirm.

BACKGROUND

¶2      When Estes married his wife (Wife), they both had children from prior relationships. Estes had a daughter, Kate.[1] Wife had a daughter—Beth—and a son. When the abuse began, the family lived in Clinton, a city in Davis County. Wife's children would switch between Wife and their father every week. Kate would visit too, as her schedule dictated. In 2015, Estes and Wife moved to Roy, a city in Weber County.

¶3      Though Beth was not certain of the exact year that the abuse began, she distinctly remembered the first incident as having taken place in the Clinton home. Beth testified that she was alone in the living room with Estes. She remembered Wife being gone and her siblings rollerblading outside. Beth had been outside with them but had come inside to get something. That was when Estes "grabbed [her] hand" and "pulled [her] on top of him." He pulled her atop his lower waist with her legs straddling him. She recalled that he grabbed her hips and moved her back and forth so that her vagina rubbed against his hard penis with only their clothes separating them. Beth remembered feeling scared and helpless but did not tell anyone about the abuse at that point.

¶4      The abuse continued after the family had moved to the Roy home. Beth recalled an incident in the Roy home where Estes repeated the same pattern of abuse that had occurred in the Clinton home. This time Estes used one hand to touch Beth under her shirt but over her bra while his other hand kept her on top of him. During this incident Estes also attempted to reach his hand down Beth's pants, but she was successful in deterring his attempt.

---

1. We use pseudonyms for both Estes's daughter and stepdaughter.

¶5    Beth recalled another incident where she and Estes were alone in the kitchen. On that occasion, Estes "pulled [her] into him" and "started kissing [her]" and touching her under her shirt.

¶6    On another occasion, Beth recalled Estes forcing her to touch his penis. The two were sitting in the living room watching a show when Estes "made [her] come sit by him" and "put a blanket over" the two of them. He then grabbed her hand and forced her to touch his penis over his clothes.

¶7    Beth recalled two more times in the Roy home when Estes made her straddle him and repeated the same pattern of abuse. During the first of these incidents, the abuse stopped when Beth's grandparents knocked on the door and interrupted the encounter. During the final incident, Beth remembered wearing a green dress and that only her underwear separated her from Estes's clothing.

¶8    After that, Beth "distanced [herself] from [Estes]." She took precautions to avoid being home alone with him. From that point on, Beth recalls the situation at home improving.

¶9    Kate also testified that she had suffered sexual abuse at the hands of Estes "at the Roy house." Kate testified that on one occasion she woke in the middle of the night to Estes's "hand on [her] thigh" rubbing "the inner crease of [her] leg." She testified that his hand then "moved up to [her] stomach" but that she "pushed his hand away, and . . . told him to stop" and "[h]e left." She testified that on "[t]hree or four different occasions," Estes "put his hands on [her] butt" as she lay on the couch. Kate testified that on another occasion Estes "[hugged her] from behind" and rested his hands on her breasts. Kate testified that after this happened, she stopped going to Estes's house.

¶10    Kate testified that once she stopped going to Estes's house, she "turned into a troubled kid." To avoid being forced to return to Estes's house, Kate ultimately disclosed the abuse to her mother. This disclosure led to an investigation.

¶11 As a part of that investigation in 2016, Beth was interviewed at the Children's Justice Center (CJC). There, she was asked whether anyone had been inappropriately touching her. During that interview she stated that nothing had been going on and no one had been touching her. At trial she testified that someone had in fact been touching her but that at the time of the CJC interview, she was scared "that [no] one would believe [her]" and "that something might happen in [their] family."

¶12 Years later, Wife discovered inappropriate Facebook messages between Beth and a boy. When Beth's father found out about this, he and Beth's stepmother went through Beth's room, where they discovered her journal. In the journal was an entry from 2021 that discussed how she "hated [Estes] for the things . . . that he had done to her." When Beth's father confronted Beth about the entries, she reluctantly disclosed the abuse. Eventually the police were involved, and Beth was taken back to the CJC for another interview in 2021. In this second interview, Beth acknowledged that she had lied in her first CJC interview, and she chronicled the entirety of the abuse. In that interview, Beth said that the initial abuse happened "like the summer before 6th grade" and that it happened "at the Clinton house."

¶13 Estes was charged in Davis County with five counts of aggravated sexual abuse of a child. However, upon Estes's motion, the district court dismissed the four Weber County charges for improper venue. The dismissal left only the initial instance of Beth's abuse in Davis County—one count of aggravated sexual abuse of a child.

¶14 Before Estes's bench trial, the State gave notice of its intent to introduce evidence under rule 404(c) of the Utah Rules of Evidence. *See* Utah R. Evid. 404(c)(1) ("In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other acts of child molestation to prove a propensity to commit the crime charged.").

The State argued that the evidence was specifically admissible under rule 404(c) as other acts of child molestation. The court permitted Kate's and Beth's testimony of other acts of child molestation under rule 404(c). At the close of evidence, Estes moved for a directed verdict, arguing that the evidence presented was not legally sufficient to establish the offense charged. The court denied Estes's motion, and Estes was convicted of one count of aggravated sexual abuse of a child based on the initial incident involving Beth in the Clinton home.

## ISSUES AND STANDARDS OF REVIEW

¶15 Estes appeals his conviction on two grounds. First, he asserts that "the district court committed reversible error by admitting evidence of other, alleged, uncharged bad acts involving" Kate.[2] "A trial court's decision to admit evidence under rule 403 of the Utah Rules of Evidence is reviewed for an abuse of discretion." *State v. Fedorowicz*, 2002 UT 67, ¶ 35, 52 P.3d 1194 (cleaned up). We grant significant deference to a lower court's determination to allow or exclude evidence and review its decision for abuse of discretion. *State v. Cuttler*, 2015 UT 95, ¶ 12, 367 P.3d 981. A trial court abuses its discretion "if its decision to admit or exclude evidence is beyond the limits of reasonability." *Id*. (cleaned up).

---

2. In Estes's initial brief, he argued that evidence of other uncharged acts against both Beth and Kate were inadmissible under rule 403, rule 404(b), and rule 404(c) of the Utah Rules of Evidence. However, at oral argument, Estes conceded that (1) rule 404(b) is not at issue in this case, (2) the plain language of rule 404(c) does not limit the rule to prior acts, and (3) evidence of other acts against Beth was admissible. Thus, the only remaining issue is whether the evidence of acts against Kate should have been excluded under rule 403.

¶16    Second, Estes argues that the district court committed reversible error when it denied his motion challenging the sufficiency of the evidence based on his assertion that the evidence was inherently improbable. As to whether the district court's verdict was supported by sufficient evidence, we will reverse a fact finder's verdict only if "the evidence is sufficiently inconclusive or inherently improbable such that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime for which he or she was convicted." *State v. Jok*, 2021 UT 35, ¶ 17, 493 P.3d 665 (cleaned up).


ANALYSIS

I. Other Acts to Prove a Propensity

¶17    Estes first alleges that the district court abused its discretion when it admitted evidence of his other acts against Kate. Estes argues that although the evidence may be admissible under rule 404(c) of the Utah Rules of Evidence, it is inadmissible under rule 403 because the evidence is substantially more unfairly prejudicial than it is probative.

¶18    Under rule 404(c), when "a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other acts of child molestation to prove a propensity to commit the crime charged." Utah R. Evid. 404(c)(1). Under the plain language of this rule, Kate's testimony about Estes's acts against her are admissible as evidence of "other acts of child molestation."

¶19    However, to be admissible, all evidence must also satisfy rule 403. *See State v. Ring*, 2018 UT 19, ¶ 28, 424 P.3d 845 ("[B]efore the court admits [rule 404(c)] evidence, it must weigh the evidence's probative value against its potential for prejudice under rule 403."). Even otherwise admissible evidence can be excluded under rule 403 "if its probative value is substantially

outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Utah R. Evid. 403.

¶20    In the past, Utah courts conducted a rule 403 analysis in the rule 404(c) context by mechanistically applying the factors from *State v. Shickles*, 760 P.2d 291 (Utah 1988), *abrogated on other grounds by State v. Doporto*, 935 P.2d 484 (Utah 1997). In his brief, Estes follows this pattern and strictly applies the *Shickles* factors. However, at oral argument, Estes acknowledged that a rigid reliance on the *Shickles* factors is misplaced under current law.[3] The Utah Supreme Court has held that while some of the *Shickles* factors "taken individually" might bear on a rule 403 analysis, no court should rigidly "moor its rule 403 analysis entirely and exclusively to all of the *Shickles* factors." *State v. Cuttler*, 2015 UT 95, ¶ 19, 367 P.3d 981. Instead, courts analyze the probative value of evidence and weigh it against the alleged unfair prejudice. It is

---

3. Indeed, in *State v. Thornton*, 2017 UT 9, 391 P.2d 1016, our supreme court repudiated the prior requirement of a "scrupulous examination" of the *Shickles* factors. *Id.* ¶ 53. In *State v. Lowther*, 2017 UT 34, 398 P.3d 1032, *abrogated on other grounds by State v. Green*, 2023 UT 10, 532 P.3d 930, the court held that a mechanical application of these factors is error. *Id.* ¶ 45. And at least one member of this court has noted that in the rule 404(c) context, it makes little sense to apply factors developed specifically to guard against propensity considerations to a rule specifically developed to invite consideration of propensity evidence. *State v. Frederick*, 2019 UT App 152, ¶ 53, 450 P.3d 1154 (Mortensen, J., concurring). Although it has been suggested that the advisory committee note's direction that trial courts "should . . . consider" the *Shickles* factors is wrong and a misdirection, *id.*, the note lives on to this day, *see* Utah R. Evid. 404 original advisory committee's note. We encourage the advisory committee to remedy this error and redraft its note to be consistent with present-day law.

the objecting party's burden to demonstrate that the evidence is unfairly prejudicial such that it substantially outweighs its probative value. *State v. Smith*, 2019 UT App 141, ¶ 35, 449 P.3d 971 ("Rule 403 is an inclusionary rule. And it therefore imposes the heavy burden not only to show that the risk of unfair prejudice is greater than the probative value, but that it substantially outweighs the probative value." (cleaned up)).

¶21    When conducting this analysis in a rule 404(c) context, the "evidence's tendency to prove the defendant's propensity for child molestation can no longer be assessed on the 'prejudice' side of the rule 403 balancing test." *State v. Fredrick*, 2019 UT App 152, ¶¶ 44–45, 450 P.3d 1154. Rather than weighing *against* a finding of admissibility, the evidence of propensity is the exact reason rule 404(c) evidence is admitted. "Thus, in order for rule 404(c) evidence to be unfairly prejudicial, the defendant must be able to show something *other than* the propensity nature of the evidence that weighs on the prejudice side of the equation." *Id.* ¶ 46; *see also State v. Modes*, 2020 UT App 136, ¶ 21, 475 P.3d 153 (stating that to "establish prejudice in a rule 404(c) context, a defendant would have to show that the evidence demonstrates something apart from the act of sexual molestation of a child").

¶22    Here, Estes argues that there are two reasons—distinct from the evidence's tendency to prove propensity—that the evidence should not have been admitted. First, Estes argues that the facts surrounding Kate's allegation are insufficiently probative such that their admission is unfairly prejudicial. Second, he argues that the evidence is unfairly prejudicial because it bolsters the credibility of Beth as a witness.

¶23    First, Estes argues that because there was insufficient evidence to support Kate's allegation, the evidence was minimally probative and, by definition, unfairly prejudicial. For example, Estes points to the fact that Kate's allegations were never prosecuted. Rule 404(c), however,

> does not require that a defendant be convicted of a crime for the associated other-acts evidence to be admissible. That is, the ultimate legal disposition of a previous act of child molestation is largely irrelevant to whether the evidence is admissible under rule 404(c). What is relevant is whether the defendant committed other acts that show his propensity to molest children.

*Modes*, 2020 UT App 136, ¶ 17. In fact, the standard of proof for a conviction and for the admissibility of evidence are substantially different. To convict a defendant of a crime, every element of the offense must be proved beyond a reasonable doubt. But to admit evidence under rule 404(c), that evidence must support only a finding that a fact exists; in other words, that fact must be supported by a preponderance of the evidence. *Cf. State v. Lucero*, 2014 UT 15, ¶ 19, 328 P.3d 841 ("In the context of rule 404(b), similar act evidence is relevant only if the jury can reasonably conclude by a preponderance of the evidence that [1] the act occurred and that [2] the defendant was the actor." (cleaned up) (quoting *Huddleston v. United States*, 485 U.S. 681, 689 (1988))), *abrogated on other grounds by State v. Thornton*, 2017 UT 9, 391 P.3d 1016; *see also* Utah R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."). Here, Kate's testimony provided sufficient evidence to find by a preponderance of the evidence that Estes molested her.

¶24 Estes next asserts that Kate's testimony should not have been admitted because it was unfairly prejudicial in that it bolstered Beth's credibility. But Estes's "position is untenable, because such selective admission of evidence would run contrary to the very purpose of rule 404(c)"—to allow evidence of a propensity to molest children. *See Modes*, 2020 UT App 136, ¶ 19. The district court *could not* admit evidence sufficient to demonstrate that Estes had a propensity to molest children

without necessarily bolstering Beth's credibility. Kate's testimony bolsters Beth's credibility only *because* it establishes Estes's propensity. It cannot do one without the other. Admitted propensity evidence will inevitably make a victim's story more believable; that is the point of propensity evidence.

¶25 The bolstering of Beth's credibility is intrinsic to Estes's propensity, and we detect no other unfair prejudice that rule 403 (in the rule 404(c) context) should prevent. Kate's testimony did not include any unduly inflammatory, "unnecessary," or "emotionally charged details." *Id.* ¶ 16 (cleaned up). It did not include any "technicolor details, beyond its tendency to show a propensity for child molestation." *Fredrick*, 2019 UT App 152, ¶ 46. Her story mirrored Beth's, and the details were perhaps even more muted than those in Beth's version.

¶26 When we compare the unfair prejudice articulated by Estes to the probative value of Kate's testimony, we conclude that the former does not substantially outweigh the latter. It is not clear to us that there was some unfair prejudice created by Kate's testimony other than the fact that it tended to prove Estes's propensity to molest children. The admission of propensity evidence is the very purpose of rule 404(c), and showing such a propensity cannot alone be characterized and weighed as unfair prejudice. Because the probative value of Kate's testimony is not substantially outweighed by unfair prejudice, the district court did not abuse its discretion in admitting the evidence.

## II. Physical Impossibility

¶27 Estes next claims that the district court committed reversible error when it denied his motion challenging the sufficiency of the evidence. He states specifically that this court "should reverse the convictions entered against Estes, based on the *inherent improbability* of the testimony" of Beth. (Emphasis added.) At oral argument, Estes clarified that his argument was that Beth's testimony described a circumstance that was

"physically impossible."[4] "Testimony is physically impossible when what the witness claims happened could not have possibly occurred. If [the witness] had testified that the molestation occurred on the moon, her testimony would have been inherently

---

4. At oral argument, Estes distinguished his argument as a physical impossibility claim, not an inherently improbable claim. However, the concept of physical impossibility almost always shows up in our case law in the context of an inherent improbability claim. If what Estes is really making is an inherent improbability argument, it might also fail due to lack of preservation. A claim that a witness's testimony is inherently improbable stems from our supreme court's decision in *State v. Robbins*, 2009 UT 23, ¶¶ 14–21, 210 P.3d 28. A *Robbins* claim "that a particular witness's testimony is inherently improbable is not the same as a claim that the State's evidence is insufficient." *State v. Skinner*, 2020 UT App 3, ¶ 24, 457 P.3d 421. And while a *Robbins* claim "may be a component of an insufficiency challenge," "not every insufficiency challenge raises a *Robbins* issue." *State v. Doyle*, 2018 UT App 239, ¶ 19, 437 P.3d 1266. Based on Estes's motions, "the district court never would have known that [Estes] wanted it to assess . . . inherent improbability," and thus the district court "did not have an opportunity to rule on the *Robbins* issue." *State v. Stricklan*, 2020 UT 65, ¶ 128, 477 P.3d 1251. This may be a close call on preservation. While Estes did not use the specific words "inherent improbability," he did discuss the concept of physical impossibility below. Thus, it is difficult to say whether Estes's "general" sufficiency motions preserved the "specific inherent improbability" claim he raises on appeal. *See State v. Lewis*, 2020 UT App 132, ¶ 45 n.5, 475 P.3d 956. It doesn't matter though, because even on the merits, Estes's physical impossibility claim fails.

improbable because it is physically impossible for that to have occurred." *State v. Robbins*, 2009 UT 23, ¶ 17, 210 P.3d 288.[5]

¶28 At oral argument on appeal, Estes noted that Beth testified both at trial and during her second CJC interview that the abuse happened during the summer before her sixth grade year—the summer of 2016. However, Beth also testified that the abuse happened in the Clinton home. It is undisputed that the family moved from the Clinton home to the Roy home during 2015. According to Estes, the combination of these facts makes Beth's testimony physically impossible: because the family did not live in the Clinton home in 2016, it would have been physically impossible for Beth to be abused in the Clinton home in 2016.

¶29 Estes asserts that Beth has been adamant about the abuse happening during the summer of 2016. At oral argument, appellate counsel asserted that she "never varies from that story"

---

5. Assuming that Estes's physical impossibility claim is just a variation of an inherent improbability claim, our analysis follows a clearly established procedure:

> First, we must analyze the evidence that [Estes] claims is inherently improbable and determine whether the challenged piece of evidence is of such a poor quality that it should be disregarded. If we determine that the challenged testimony is inherently improbable, we then determine if sufficient evidence remains under which a reasonable jury could have convicted. . . . On the other hand, if we determine that the challenged evidence is not inherently improbable, our sufficiency-of-the-evidence analysis will include the challenged evidence.

*State v. Barnes*, 2023 UT App 148, ¶¶ 19–20, 542 P.3d 108, *cert. denied*, 544 P.3d 459 (Utah 2024) (cleaned up).

and that Beth's testimony was "unequivocal" that this happened the summer before her sixth grade year.

¶30    But at trial, Beth testified that she didn't "remember dates and times." When she did give a date during her 2021 CJC interview, she said it was "*like* the summer before sixth grade." (Emphasis added.) On cross-examination she confirmed that she had made that statement during her 2021 CJC interview. But outside of her initial CJC interview, Beth never volunteered a date. She confirmed the cross-examining attorney's references to 2016, and she referenced her earlier testimony at the CJC. But when asked directly whether she knew the year the first incident occurred, she said, "No." On redirect, the following exchange took place:

> *Prosecutor*:    What year [did] that occur[], do you know?
>
> *Beth*:   No.
>
> *Prosecutor*:    So when you were asked by [Estes's counsel] could it have been in 2016, that's really a guess?
>
> *Beth*:   Yes.
>
> *Prosecutor*:    Could it have been earlier?
>
> *Beth*:   Yes.
>
> *Prosecutor*:    But you are certain it occurred in Clinton?
>
> *Beth*:   Yes.
>
> *Prosecutor*:    In that living room?
>
> *Beth*:   Yes.

¶31    Our supreme court has recognized that "children are often not able to identify with a high degree of reliability, and sometimes not at all, *when* an event in the past took place." *State*

*v. Taylor*, 2005 UT 40, ¶ 15, 116 P.3d 360 (emphasis added) (cleaned up). Given this, it might have been that Beth was completely wrong about the date of the abuse. But Beth was not really adamant about a date that was incorrect; instead, she was unsure and hesitant from the beginning.

¶32    However, her statement in her 2021 CJC interview that "it was like the summer before 6th grade" was followed immediately by her saying "and it was at the Clinton house." Both those things cannot be accurate. Thus, the district court was in a position where it had to assess the situation and determine the reliability of either statement.

¶33    "Following a bench trial, . . . we review the court's findings of fact for clear error, granting due regard to the opportunity of the trial court to judge the credibility of the witnesses." *Kelly v. Timber Lakes Prop. Owners Ass'n*, 2022 UT App 23, ¶ 23, 507 P.3d 357 (cleaned up). It is part of the court's role in a bench trial to make findings of fact, and we will not disturb those findings absent clear error.

¶34    Given Beth's uncertainty regarding the date, and her certainty regarding the location, it was not clearly erroneous for the district court to find her testimony concerning the location of the relevant events reliable. This does not appear to be a mistake of the district court at all but rather a reasoned decision based on the credibility of the witnesses before it. Based on the record, it is clear that one of the witnesses clarified the "time frame," and the court was well aware that the family was "living in Roy" during the summer of 2016—in other words, well aware of the alleged physical impossibility. Rather than conclude that this made Beth's testimony inherently improbable, the district court observed, "It would be unusual in a case of this nature for the facts to line up perfectly. In fact, I would almost think that if they did, there would be less believability in them. Inconsistencies seem to be

more consistent with people being honest and just not having a perfect memory."

¶35    It is apparent that Beth does not have a perfect memory. But the district court found her to be "very credible" despite some temporal errors in her testimony. Those errors do not constitute physical impossibility so as to render her testimony inherently improbable.

¶36    Because Beth's testimony neither presents a physical impossibility nor is otherwise inherently improbable, the district court appropriately considered that evidence in its analysis. With Beth's testimony included in the balance, there was sufficient evidence under which the district court could have convicted Estes. *See State v. Barnes*, 2023 UT App 148, ¶¶ 19–20, 542 P.3d 108, *cert. denied*, 544 P.3d 459 (Utah 2024). We therefore affirm the district court's denial of Estes's motion challenging the sufficiency of the evidence.

CONCLUSION

¶37    The district court did not abuse its discretion when it determined that the evidence of Estes's abuse against Kate was admissible under rule 403. Furthermore, Beth's testimony was not sufficiently inconclusive or inherently improbable such that reasonable minds would have entertained some reasonable doubt as to Estes's guilt. We therefore affirm.