**2026 UT App 25**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
AARON ALVARADO-RODRIGUEZ,
Appellant.

Opinion
No. 20230939-CA
Filed February 20, 2026

Third District Court, Salt Lake Department
The Honorable Kara Pettit
No. 181905039

Robert T. Denny, Attorney for Appellant

Derek E. Brown and Connor Nelson,
Attorneys for Appellee

JUDGE RYAN M. HARRIS authored this Opinion.
JUDGE DAVID N. MORTENSEN concurred in result, with opinion.
JUDGE RYAN D. TENNEY concurred, with opinion.

HARRIS, Judge:

¶1      A jury convicted Aaron Alvarado-Rodriguez of sexually abusing his eleven-year-old stepdaughter. During trial, and over his objection, the State presented evidence that Alvarado-Rodriguez had sexually abused another child too. Alvarado-Rodriguez appeals his conviction, asserting that the trial court abused its discretion in admitting evidence about his abuse of the other child. We reject Alvarado-Rodriguez's arguments and affirm his conviction.

BACKGROUND[1]

¶2     Rachel[2] lived with Alvarado-Rodriguez as well as her mother, her two brothers, a cousin, and two of Alvarado-Rodriguez's coworkers. Rachel's mother had been married to Alvarado-Rodriguez since around 1993, and they had the two boys together, but Rachel was her mother's child from a previous relationship.

¶3     One night in 2001, when Rachel was eleven years old, Alvarado-Rodriguez walked into her room. Rachel pretended to be asleep, but she recalled being afraid because his approach "was typical of what he had done before." She said that in the past, when she was about four years old, Alvarado-Rodriguez had "put his hand underneath [her] underwear and tickled [her] vagina." After that, she sometimes wore jeans to bed to make it harder for Alvarado-Rodriguez to slide his hand under her pants.

¶4     On this occasion, Alvarado-Rodriguez knelt beside Rachel's bed and unzipped his pants. He then "grabbed" Rachel's hand, "put it on his penis," and moved it "up and down" with his hand. Rachel asked him, "What are you doing?" and he mumbled, "I'm sorry," as he left the room. Rachel stayed in her bed, crying for about forty-five minutes. She then confronted Alvarado-Rodriguez in front of her mother, and she demanded that Alvarado-Rodriguez tell her mother what he had just been doing in her room. Alvarado-Rodriguez repeatedly told Rachel's mother

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly. We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (cleaned up).

2. We use pseudonyms for the children in this opinion.

that he was "sorry," but Rachel's mother seemed "oblivious," like she "didn't know what was going on."

¶5 During this confrontation, Rachel's eighteen-year-old cousin walked in. Her cousin's understanding of the event was that Alvarado-Rodriguez had been in Rachel's room "touching her inappropriately," and she insisted that Rachel sleep in her room going forward. The abuse was not reported to the police at that time. About a week after this incident, Rachel left Alvarado-Rodriguez's residence and moved out of state.

¶6 Rachel reported the abuse in 2017 when she was twenty-six years old, explaining that she was concerned that Alvarado-Rodriguez might abuse her nieces.

¶7 After Rachel's report, a detective interviewed Alvarado-Rodriguez at his workplace. The detective told Alvarado-Rodriguez that Rachel's friend, Alison, had also reported being abused by him when she was a child under the age of fourteen. Alvarado-Rodriguez denied both allegations in general but acknowledged that Rachel had accused him of inappropriately touching her when she was about eleven years old. And he admitted that he went into Rachel's room on the night of the incident, but he claimed that it was because he heard her "screaming." He also acknowledged that he had told her that "he was sorry," but he didn't explain why he apologized. In addition, he admitted that he had touched Rachel's "stomach area, or maybe the hips or the butt area," conceding that the touching was "[m]aybe . . . more than what [he] was supposed to do" but expressing that he "didn't touch her like [he] wanted to do."

¶8 Alvarado-Rodriguez was charged with one count of aggravated sexual abuse of a child based on the incident with Rachel in 2001. Before trial, the State informed Alvarado-Rodriguez that it intended to present evidence of two other instances in which he had previously committed child molestation. First, the State indicated that it would present

evidence that Alvarado-Rodriguez "had touched [Rachel's] vagina previously" when she was younger. Alvarado-Rodriguez did not object to the introduction of this evidence. Second, the State gave notice that it would seek to admit evidence that Alvarado-Rodriguez had abused Alison in another country while Alvarado-Rodriguez was living in a crowded house with Alison and others. Specifically, the State intended to present evidence that when Alison was about eight years old, Alvarado-Rodriguez went into her room, laid down with her, "put his hands down the front of her pants," and touched her vagina.

¶9    Alvarado-Rodriguez moved to exclude the evidence regarding Alison, arguing that its probative value was low because Alison's account of abuse differed, in ways he believed were material, from his alleged abuse of Rachel. He also argued that the circumstances in which the alleged abuse of Alison occurred—namely, living in poverty in a foreign country—would infuse "bias unrelated to the propensity to commit child molestation" and "confuse the issue before the jury." And he asserted that Alison's testimony would be needlessly cumulative and would waste time in light of Rachel's testimony that he had previously abused her.

¶10    At oral argument on the motion, Alvarado-Rodriguez argued that the alleged abuse of Alison was "very different than [the] hand on a penis" allegation involving Rachel, rendering it "different enough" that it should be excluded. The State agreed that the circumstances of where the abuse occurred and the conditions of poverty surrounding it should not come in, but it argued that, under rules 403 and 404(c) of the Utah Rules of Evidence, evidence of Alvarado-Rodriguez's abuse of Alison should be admissible because it showed that Alvarado-Rodriguez had a propensity to molest children. The court determined that it would allow evidence about Alison to be introduced at trial, but it limited Alison's testimony to the conduct itself and not the living situation. With that limitation, the court concluded that

"the probative value of propensity would not be substantially outweighed by the danger of unfair prejudice," reasoning that while the "conduct is not identical," it was "similar and the similarities [were] enough" to give the evidence "pretty substantial probative value" regarding propensity.

¶11    At trial, Rachel, her cousin, and the detective who interviewed Alvarado-Rodriguez testified to the facts as recounted above. Alison also testified, stating that in the late 1990s when she was around eight years old, Alvarado-Rodriguez entered her room, laid down next to her in bed, put his hand down the front of her underwear, put his fingers in her labia area, and moved them in a circular motion for about five minutes. She said that he then pulled his hand out of her underwear, kissed her on the lips, and threatened to come back and do it again. Alison testified that Alvarado-Rodriguez abused her in this way between four and six times. She also stated that she had known Rachel since Alison was about four or five years old. And Alison recalled that, when she was around ten years old, Rachel told her that she "woke up one time and [Alvarado-Rodriguez] had his penis in her hand."

¶12    After deliberation, the jury convicted Alvarado-Rodriguez as charged of abusing Rachel.

ISSUE AND STANDARD OF REVIEW

¶13    Alvarado-Rodriguez now appeals his conviction, asserting that the trial court abused its discretion in denying his motion to exclude Alison's testimony. "We review a trial court's evidentiary rulings for an abuse of discretion." *State v. Garcia*, 2022 UT App 77, ¶ 25, 526 P.3d 1238.

ANALYSIS

¶14 In challenging the trial court's evidentiary ruling, Alvarado-Rodriguez takes issue only with the court's rule 403 balancing of the rule 404(c) evidence. He argues that the court should have excluded Alison's testimony "because it had low probative value" and "carried a high risk of prejudice where it described more serious claims of abuse against an even younger child." Alvarado-Rodriguez specifically claims that the admission of evidence of his abuse of Alison was unfairly prejudicial because it described "the more serious conduct of object rape compared to Rachel's charges of aggravated sexual abuse." Finally, Alvarado-Rodriguez asserts that without Alison's testimony, there is a reasonable probability that he would have been acquitted since the State's case against him for his abuse of Rachel rested on a "weak evidentiary foundation."

¶15 Generally, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." Utah R. Evid. 404(b)(1). In most cases, the prosecution "must articulate a nonpropensity purpose" before other-acts evidence will be admitted. *State v. Modes*, 2020 UT App 136, ¶ 14, 475 P.3d 153. But in cases of alleged sexual abuse of a child under the age of fourteen, the basis and purpose of the admissibility of other-acts evidence is materially different. In those cases, "the court may admit evidence that the defendant committed any other acts of child molestation to prove a propensity to commit the crime charged." Utah R. Evid. 404(c)(1).

¶16 Several features of this exception are notable. First, the defendant must be accused of "child molestation" for the

exception to apply.[3] *Id.* Second, the reason for the admission of the other-acts evidence is to potentially prove that the defendant has a "propensity to commit the crime charged," *id.*, namely, an act of child molestation. Thus, the rule does not require the articulation of "a non-propensity purpose, instead allowing such evidence even if there is no other plausible or avowed purpose for such evidence." *State v. Garcia*, 2022 UT App 77, ¶ 29, 526 P.3d 1238 (cleaned up). Third, "the rule does not require that a defendant be convicted of a crime for the associated other-acts evidence to be admissible." *Modes*, 2020 UT App 136, ¶ 17. Stated otherwise, "the ultimate legal disposition of a previous act of child molestation is largely irrelevant to whether the evidence is admissible under rule 404(c)." *Id.* Indeed, "the rule addresses evidence that the defendant *committed* previous acts of child molestation, and it is not necessarily concerned with whether the defendant was ever previously *convicted* for any such acts." *Id.*

¶17 Here, Alvarado-Rodriguez acknowledges that the evidence concerning Alison meets the requirements of rule 404(c), but he contends the evidence should nonetheless have been excluded under rule 403. Alvarado-Rodriguez is correct that before a court can admit rule 404(c) evidence, "it must weigh the evidence's probative value against its potential for prejudice under rule 403." *State v. Ring*, 2018 UT 19, ¶ 28, 424 P.3d 845. Evidence that is otherwise admissible under rule 404(c) is still subject to exclusion "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Utah R. Evid. 403.

---

3. Rule 404(c)(3) of the Utah Rules of Evidence defines "child molestation" to mean "an act committed in relation to a child under the age of 14 which would, if committed in this state, be a sexual offense or an attempt to commit a sexual offense."

¶18 In challenging the trial court's ruling, Alvarado-Rodriguez makes two arguments. First, he argues that Alison's testimony had "little probative weight." Second, he asserts that it carried "a high risk of unfair prejudice." We disagree on both counts.

¶19 Alison's testimony had significant probative value. As noted, because this evidence cleared the initial rule 404(c) hurdle, this evidence could be admitted in this case to prove that Alvarado-Rodriguez had a propensity to molest children. When properly admitted under rule 404(c), such evidence has a tendency to be powerfully probative. *See State v. Fredrick*, 2019 UT App 152, ¶ 45, 450 P.3d 1154 ("Evidence admitted pursuant to rule 404(c) . . . is admitted precisely *because of* its (usually powerful) value as propensity evidence.").

¶20 Alvarado-Rodriguez resists this intuitive conclusion by making two arguments. First, he asserts that the probative value of Alison's testimony was compromised because her allegations were over twenty years old, "did not result in a conviction, did not lead to prosecution, and otherwise lack[ed] corroboration." But as explained, the fact that an allegation has not yet led to a conviction does not, by itself, mean that the evidence has low probative value, and it certainly does not prevent its admissibility. *See Modes*, 2020 UT App 136, ¶ 17. The key question is whether Alvarado-Rodriguez committed the previous acts, not whether he was convicted of charges based on them. *Id.* And while Alison's testimony about the additional acts of child molestation "largely hinged on the jury's evaluation of her credibility," *Garcia*, 2022 UT App 77, ¶ 34, this does not mean that evidence of those acts was not probative of Alvarado-Rodriguez's propensity to sexually abuse children. Moreover, the interval of time between the act of abuse and the report of abuse does not, standing alone, diminish its probative value. *See Ring*, 2018 UT 19, ¶ 30 ("[T]he passing of time, on its own, is not enough to rob [rule] 404(c) evidence of its probative value."). Alison's delay in reporting the abuse is no more significant than Rachel's delayed report. *Cf. State v. Bair*,

2012 UT App 106, ¶ 47, 275 P.3d 1050 (noting that Utah courts recognize that "delayed discovery and reporting are common in child sexual abuse cases" (cleaned up)).

¶21 Second, Alvarado-Rodriguez asserts that his alleged abuse of Alison had "little probative value to show that [he] had the propensity to commit the conduct [Rachel] alleged" because it involved a different and more serious type of conduct with a younger child. Alvarado-Rodriguez's assertion misses the mark. While there are certainly some differences between the acts Alison described and the acts Rachel described, those differences are not so great as to meaningfully reduce the probative value of Alison's testimony. Indeed, we agree with the State's assertion that "the similarities" between the two sets of described acts "far outweigh the differences that would be lost on a jury untrained in the specifics of the law." But regardless of whether the acts Alison described might have been chargeable as object rape rather than sexual abuse,[4] we agree with the State's contention that "[t]he average juror could disagree on which act was more serious and violative of a young girl." And more to the point of the question

---

4. *Compare* Utah Code § 76-5-404.1(1), (3)(h), (3)(j) (2000) ("A person commits aggravated sexual abuse of a child when in conjunction with [touching the genitalia of any child or otherwise taking indecent liberties with a child] . . . the offense was committed by a person who occupied a position of special trust in relation of the victim . . . or . . . the accused caused the penetration, however slight, of the genital or anal opening of the child by any part or parts of the human body other than the genitals or mouth."), *with id.* § 76-5-402.3(1) ("A person commits object rape of a child when the person causes the penetration or touching, however slight, of the genital or anal opening of a child who is under the age of 14 by any foreign object, substance, instrument, or device, not including a part of the human body, with intent to cause substantial emotional or bodily pain to the child or with the intent to arouse or gratify the sexual desire of any person.").

before us here, both Rachel's testimony and Alison's testimony concerned violative sexual acts involving girls within the age range of eight to eleven, the two sets of acts were described to have occurred within a few years of each other, and in both instances, Alvarado-Rodriguez was alleged to have abused the girl after walking into the room where she was sleeping and then proceeding to touch her in a sexual manner. In sum, although there were some differences, there were certainly a number of key similarities too. As a result, the trial court did not abuse its discretion in determining that, despite the differences in the nature of the acts described, evidence that Alvarado-Rodriguez had sexually abused Alison had high probative value in a trial about whether Alvarado-Rodriguez sexually abused Rachel during the same general time period.

¶22 And while Alison's testimony had significant probative value, it did not carry significant risk of unfair prejudice. In this context, Alvarado-Rodriguez must do more than simply point out that Alison's testimony constituted propensity evidence. *See Fredrick*, 2019 UT App 152, ¶ 46 ("[I]n order for rule 404(c) evidence to be unfairly prejudicial, the defendant must be able to show something *other than* the propensity nature of the evidence that weighs on the prejudice side of the equation."). Along these lines, Alvarado-Rodriguez first argues that Alison's testimony was unfairly prejudicial for the same reasons that he asserted it lacked probative value: that it involved a potentially more serious crime perpetrated against a somewhat younger child and that it occurred over twenty years prior. But as we explained above, these differences do not significantly detract from the evidence's probative value, and for the same reasons, they do not significantly contribute to a risk of unfair prejudice.

¶23 Alvarado-Rodriguez next argues that Alison's testimony was unfairly prejudicial because it contained "technicolor details" apart from the abuse. *See id.* ("[A] defendant may be able to demonstrate that the proposed evidence contains technicolor

details, beyond its tendency to show a propensity for child molestation, that might be unduly prejudicial."). As examples of such "technicolor details," Alvarado-Rodriguez points to Alison's testimony about how the abuse impacted her and about whether the abuse was reported to the police. This assertion is unavailing. As noted, the court had already taken steps to limit Alison's testimony and remove certain potentially inflammatory details. And the things that Alvarado-Rodriguez now identifies are just not the sort of extraneous, inflammatory, or graphic details that give rise to unfair prejudice. At most, these details represent relatively neutral information necessary to establish the context of the abuse for the jury. Accordingly, Alvarado-Rodriguez has not demonstrated that the court abused its discretion in determining that the probative value of Alison's testimony was not substantially outweighed by the danger of unfair prejudice.

## CONCLUSION

¶24    Alvarado-Rodriguez has not shown that the trial court abused its discretion in denying his motion to exclude Alison's testimony. Accordingly, we affirm both the court's evidentiary ruling as well as Alvarado-Rodriguez's conviction.

————————

MORTENSEN, Judge (concurring in the result):

¶25    I concur fully in the result and in most of the analysis of the lead opinion. I would take the opportunity this case presents, however, to clarify that while a court can certainly consider similarity between the charged conduct and the other acts perpetrated on other victim(s) in conducting a rule 403 analysis,

similarity in specific acts is not *required* for admissibility.[5] Accordingly, the trial court, while ultimately correct in its admission of the other-acts evidence, need not have determined that any threshold of similarity in conduct was necessary to show probative value. Specifically, the trial court stated that "the similarities are *enough*" to give the evidence substantial probative value. (Emphasis added.) Therefore, while I disagree with the trial court's rationale for admitting the other-acts evidence, I would "affirm the result." *Benjamin v. Amica Mutual Ins. Co.*, 2006 UT 37, ¶ 1, 140 P.3d 1210. In fact, I have no reticence concluding that the trial court's "decision was on even firmer legal ground than it realized." *State v. Morris*, 2017 UT App 112, ¶ 18 n.7, 400 P.3d 1183.

¶26    Rule 404(c) states that "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other acts of child molestation to prove a propensity to commit the crime charged." Utah R. Evid. 404(c)(1). By rule, the definition of what qualifies as "child molestation" is fairly broad, encompassing anything that

---

5. To be clear, I am not asserting that the approach adopted by the lead opinion now requires similarity. Nor do I believe any Utah appellate case has created such a rubric. I also do not think that a court must give any rule 404(c) evidence equal, greater, or less weight in weighing its probative value versus the potential prejudicial effect. Rather, I write merely to clarify and emphasize that similarity between the charged conduct and the other-acts evidence is *not required* in a rule 403 balancing of rule 404(c) evidence. In other words, I am concerned that our cases might be misperceived to *require* some form of similarity other than that another act of child molestation has allegedly occurred at the hand of an individual currently charged with a sex offense against a child. I don't think the lead opinion is creating anything new, but I do believe the import of this and similar cases has the potential to be misunderstood, and it is for this reason that I write this concurrence.

"would, if committed in this state, be a sexual offense or an attempt to commit a sexual offense." *Id.* R. 404(c)(3). As noted in the lead opinion, *see supra* ¶ 17, after evidence clears the rule 404(c) threshold, it must then also clear a rule 403 threshold. *See State v. Ring*, 2018 UT 19, ¶ 28, 424 P.3d 845; *State v. Fredrick*, 2019 UT App 152, ¶¶ 43–44, 450 P.3d 1154.

¶27 The trial court reasoned that "the similarities are *enough*" to give the evidence "pretty substantial probative value." (Emphasis added.) This reasoning can be read to infer that absent sufficient similarity, rule 404(c) evidence might not be probative and withstand 403 balancing. If the trial court meant that the rule 403 stage itself contains a threshold requirement of similarity of victim profile or sexual act for the evidence to be admissible—which is what I think the court meant when it said the evidence was similar "enough"—then I think the court was off target. A threshold of "enough" similarity is neither supported by rule 404(c) nor required under rule 403. By virtue of having satisfied rule 404(c) alone—i.e., by virtue of being evidence of another alleged act of child molestation—the evidence is *already* similar "enough" to be admissible. True, in cases involving rule 404(c), our courts applying rule 403 have looked to the similarities or dissimilarities between the incidents in terms of assessing their relative probative value. *See, e.g.*, *State v. Cuttler*, 2015 UT 95, ¶ 24, 367 P.3d 981; *State v. Forbush*, 2024 UT App 11, ¶ 44, 544 P.3d 1. But even an incident that is mostly dissimilar would still be similar "enough" to be admissible, insofar as it still qualifies as an act of child molestation, which is all that rule 404(c) requires. Stated simply, the trial court was mistaken to the extent it suggested that rule 403 imposes some additional similarity requirement.[6]

---

6. To be clear, I am not suggesting that consideration of similarities is off limits. Rather, I am saying that the similarity is

(continued…)

¶28   In the rule 404(c) context, the focus is on the propensity to engage in sexual acts with children, not the propensity to engage in specific acts or to target a specific age or gender profile. Indeed, the plain language of the rule looks to "*any other* acts" of child molestation, not limiting itself in any way to acts cabined within some framework of similarity to the charged crime. Utah R. Evid. 404(c)(1) (emphasis added). And rule 403 does not require any granular analysis of the similarities or differences between the charged conduct and the other-acts evidence. Even if differences exist, the other-acts evidence still has significant probative value in establishing that a person has a propensity to molest children by virtue of the fact that it fulfills the threshold for admissibility established by rule 404(c).[7] While "similarities" may suggest that

not a requirement in conducting a rule 403 balancing and, specifically, that there is no baseline of similarity that must be met in applying rule 403 in the rule 404(c) context. Rule 404(c) itself does require a specific similarity—the charged crime and the other act must constitute "child molestation" as defined by the rule. Thus, in discussing similarities here, I mean similarities beyond the fact that the charged conduct and the rule 404(c) evidence both constitute child molestation.

7. I recognize that the advisory committee's note to rule 404(c) discusses rule 403 balancing and expressly encourages courts to consider the factors in *State v. Shickles*, 760 P.2d 291, 295–96 (Utah 1988), *abrogated by State v. Doporto*, 935 P.2d 484 (Utah 1997). *See* Utah R. Evid. 404 advisory committee's note. But courts should be circumspect in considering these factors. *See State v. Fredrick*, 2019 UT App 152, ¶ 53, 450 P.3d 1154 (Mortensen, J., concurring) (stating that the "continued viability" of the *Shickles* factors in the rule 404(c) context is "highly questionable" considering the "development of the law in the intervening years"). The *Shickles* court was concerned about the danger that rule 404(b) evidence would be *too* relevant because a jury might consider the evidence

(continued…)

a defendant has a "propensity" to sexually molest children, *Ring*, 2018 UT 19, ¶ 30, it does not follow that the danger of unfair prejudice substantially outweighs probative value merely because the type of charged conduct and the other-acts evidence of child molestation may differ. Indeed, Utah jurisprudence addressing rule 404(c) consistently supports the conclusion that differences between the charged conduct and the other acts of child molestation do not erode the probative value of the evidence. Never has our jurisprudence *required* that the charged acts reflect strict correspondence to the other acts in order to be probative of a propensity to sexually abuse children. *See State v. Christian*, 2025 UT App 112, ¶¶ 5–9, 38, 575 P.3d 293 (charged conduct was spanking and rubbing bare buttocks of a child, spooning with the child, touching the child's penis until the child ejaculated, mutual oral sex, and anal sex; other acts involved multiple instances of spanking buttocks, groping, and mutual oral sex), *cert. denied*, 578 P.3d 751 (Utah 2025); *State v. Estes*, 2025 UT App 10, ¶¶ 2–7, 9, 13–14, 564 P.3d 239 (charged conduct was aggravated sexual abuse for an act of simulated intercourse with a child; other acts involved multiple instances of touching a child's breasts over clothing, touching the child under her shirt, kissing the child, forcing the child to touch the abuser's penis over clothing, simulated intercourse with the child, touching the inner crease of the child's thigh, and touching the child's buttocks), *cert. denied*, 568 P.3d 261 (Utah 2025); *Forbush*, 2024 UT App 11, ¶¶ 2–4, 7–8 (charged conduct involved forcing a male child to perform oral sex and watch adult pornography and performing anal sex

---

to demonstrate propensity. Therefore, the *Shickles* court endorsed the consideration of certain factors in a rule 403 balancing. 760 P.2d at 295–96. These factors ostensibly helped blunt the evidence's "tendency to lead the finder of fact to an improper basis for decision"—propensity. *Id.* at 295. But because rule 404(c) now exists for the express purpose of allowing the consideration of propensity, gatekeeping to ameliorate the potential use of evidence for propensity purposes makes little sense.

on the child; other acts involved the abuser touching the "privates" of one female child and "cajol[ing]" another female child to put his testicles in her mouth); *State v. Plazola*, 2023 UT App 161, ¶¶ 3–7, 20, 542 P.3d 559 (charged conduct involved touching the genitals of one child and the accused placing the hand of another child on his genitals; other acts involved touching one of the children's genitals and buttocks); *State v. Garcia*, 2022 UT App 77, ¶¶ 4, 6–7, 13–15, 526 P.3d 1238 (charged conduct involved digital penetration of a child's vagina, touching a child's breasts and buttocks, and the abuser touching his penis to a child's vagina and trying to insert it into her mouth; other acts were touching the breasts of two children, touching the vagina of a child, forcing a child to perform oral sex, and raping a child);[8] *State v. Modes*, 2020 UT App 136, ¶¶ 3, 7, 475 P.3d 153 (charged conduct involved abuser touching a child's vagina and forcing the child to take off shirt, exposing his penis, and masturbating in her presence; other acts involved making another child engage in simulated intercourse and forcing two children to "kiss" and "make out"); *State v. Gollaher*, 2020 UT App 131, ¶¶ 2, 7–8, 474 P.3d 1018 (charged conduct was touching the clothed genitalia of two eleven-year-old girls; other act was a conviction for "improperly touching" a twelve-year-old girl); *Fredrick*, 2019 UT App 152, ¶¶ 5, 10 (charged conduct involved touching genitalia of a child; other acts consisted of a series of emails and online correspondence expressing a sexual interest in children); *Ring*, 2018 UT 19, ¶¶ 3, 5, 7 (charged conduct involved touching a three-year-old girl's

---

8. In *State v. Garcia*, the defendant was charged with three counts of aggravated child sexual abuse. 2022 UT App 77, ¶ 11, 526 P.3d 1238. Some of the abusive acts against the victim were also apparently admitted as uncharged conduct to demonstrate propensity, but it is not clear which actions constituted the bases for the three charges and which actions did not. *See id.* ¶ 32. This lack of clarity does not detract from my point that rule 404(c) does not require a granular similarity between the charged conduct and the other acts.

vagina with penis; other acts involved raping a six-year-old boy and sexually assaulting a six-year-old girl by "humping" her and touching her genitals); *State v. Lintzen*, 2015 UT App 68, ¶¶ 2, 4, 6, 13, 347 P.3d 433 (charged conduct limited to massaging breasts and genitals of a ten-year-old girl over and under clothing; other acts included licking the same child's vagina, forcing the child to lick the abuser's penis, anal rape, potential vaginal penetration with the abuser's penis, and showing pornographic material of children, starting when the child was about five years old and lasting several years); *State v. Bragg*, 2013 UT App 282, ¶¶ 3, 9–10, 36, 317 P.3d 452 (charged conduct involved touching a five-year-old boy's penis and anus, rubbing penises together, and simulated intercourse; other act involved prior conviction of sexual abuse of a six-year-old girl).

¶29 Of course, I recognize that some cases have highlighted similarity in rule 404(c) evidence when applying a rule 403 balancing. *See Cuttler*, 2015 UT 95, ¶ 24 (highlighting the similarities between the charged conduct and the other acts, which all involved "oral sodomy, anal rape, and vaginal penetration" of the abuser's daughters when they were between seven and nine years old over a prolonged period of time with the abuser using a nickname for his penis); *Forbush*, 2024 UT App 11, ¶ 44 (noting that similarities between the charged conduct and the other acts supported admission under rule 404(c), such as the ages of the children, the location of the abuse, the familiarity of the abuser to the children, the abuse being a "crime of opportunity" rather than a product of grooming, and the abuser "touching the child inappropriately and then urging the child to touch him inappropriately"). And I recognize that these cases have not made clear that similarity is not required. However, just because a few cases—now including the instant case—have highlighted the similarity between the charged conduct and the other acts of child molestation to support the exercise of discretion in allowing evidence of a propensity to sexually abuse children, it does not

follow that those cases establish similarity as a *requirement* for the application of rule 403 to rule 404(c) evidence.

¶30 Any inference that rule 403 balancing when rule 404(c) evidence is in play rests on a minimization of variability between the charged conduct and the other acts is merely an unfortunate echo of previous rule 404 jurisprudence developed prior to the implementation of rule 404(c). In other words, the notion that similarity between the acts of sexual abuse is required, or that "enough" similarity must be shown, is simply misplaced. Ultimately, the only similarity required is that the charged conduct and the other acts involve "a sexual offense or an attempt to commit a sexual offense" against "a child under the age of 14." Utah R. Evid. 404(c)(1), (3). As I understand it, the propensity that rule 404(c) addresses is the involvement of adults in sexual activities with children in a broad sense. Underlying this inquiry is a presumption that an individual who has sexually violated a child simply has a predisposition to do so, whether because of aberrant sexual desire, an inability to appreciate boundaries between consenting adults and children, or some other impulse control or empathic defect. That's the rationale of rule 404(c). I find no textual support to cabin the scope of rule 404(c) otherwise, and I don't believe rule 403 constitutes grounds to do so either.[9] Rule 403 does not define what makes evidence probative; rule 403 merely invites a trial court to compare the probative value of evidence against unfair prejudice. *Cf. Utah Dep't of Transp. v. Target Corp.*, 2020 UT 10, ¶ 21, 459 P.3d 1017 ("Our recent cases have emphasized the importance of sticking to the text of

---

9. I have little doubt that in the not-too-distant future defendants charged with molesting children, and who have previously molested other children, will seek refuge in the limitations Judge Tenney's concurrence (not the lead opinion) advocates to exclude what they claim are insufficiently similar acts of molestation.

governing rules and statutes. We have warned of the perils of judicial glosses that skate past the governing terms of the law.").

¶31 Given this perspective, one might question the value of conducting a rule 403 balancing at all when considering rule 404(c) evidence. But the answer is simple. A rule 403 balancing addresses the prosecutorial tendency to include details from the other-acts evidence apart from those necessary to establish proclivity. The more unnecessary details that are included in the description of the other-acts evidence—perhaps by way of highlighting similarities—the greater the danger that the other-acts evidence will devolve into a litany of "technicolor details" that eclipse showing "a propensity for child molestation." *See Fredrick*, 2019 UT App 152, ¶ 46; *see also Cuttler*, 2015 UT 95, ¶ 27 (implicitly warning against "presenting the jury with inflammatory details beyond what is necessary or appropriate for it to consider when drawing that propensity inference"). For this reason alone, the prudent course is to follow that set out by rule 404(c) and include only those details necessary to establish that the other-acts evidence involved the sexual molestation of a minor under fourteen years old. Highlighting similarities will naturally have the potential to run counter to this limitation.[10]

¶32 Similarity between the charged conduct and the rule 404(c) evidence can certainly "suggest" that a defendant has a "propensity" to sexually molest children. *Ring*, 2018 UT 19, ¶ 30. And while similarity between the charged conduct and the other acts supports a finding of probative value, evidence of prior child molestation is highly probative of the propensity to molest

---

10. To be clear, my view is that courts are well within their discretion to highlight similarities but that they are not *required* to do so. Moreover, placing emphasis on similarities calls for circumspection as it runs the risk of focusing juries on inflammatory details unrelated to the proper propensity inference.

children even in the absence of similarity of the specific act or the age or gender profile of the rule 404(c) victim.[11] Thus, in affirming the denial of Alvarado-Rodriguez's motion to exclude, I would specifically convey that similarity between the charged conduct and the other-acts evidence is in no way essential or required for rule 404(c) evidence to satisfy the rule 403 balancing test. And I certainly would not endorse the trial court's approach that looked at whether "enough" similarity existed.

———————

TENNEY, Judge (concurring):

¶33    I join the lead opinion in full. I write separately to address some of the points raised by Judge Mortensen in his concurrence.

¶34    First, Judge Mortensen expresses his concern that the approach taken by the district court and that has now been affirmed by the lead opinion "might be misperceived to *require* some form of similarity other than that another act of child molestation has allegedly occurred at the hand of an individual currently charged with a sex offense against a child." *Supra* ¶ 25 n.5 (emphasis in original). The word "require" has a lot of importance in Judge Mortensen's concurring opinion, appearing repeatedly in various forms throughout. Judge Mortensen pushes back, for example, on the notion that a court may think that "similarity" exists "as a *requirement* for the application of rule 403 to rule 404(c) evidence." *Supra* ¶ 29 (emphasis in original).

———————

11. Judge Tenney's assertion that my approach suggests courts should assume differing pieces of rule 404(c) evidence have uniform probative value generally misses the point of my concurrence, which—again—is that in conducting a rule 403 analysis, similarity in specific acts is not required for admissibility.

¶35 I don't share this concern. This is so because I think that under the scheme at issue, some threshold similarity is always going to be present before a district court gets to the rule 403 portion of the analysis, so the opinions at issue (i.e., those from the district court and now this court) are simply recognizing something that's already analytically there.

¶36 Rule 404(c) states that "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other acts of child molestation to prove a propensity to commit the crime charged." Utah R. Evid. 404(c)(1). The rule then defines "child molestation" as "an act committed in relation to a child under the age of 14 which would, if committed in this state, be a sexual offense or an attempt to commit a sexual offense." *Id.* R. 404(c)(3). In my mind, once this definitional construct is satisfied, this necessarily means that there is at least some minimal amount of similarity between the various acts at issue. After all, each involves an alleged act of "child molestation" that was committed by this defendant. As a result, I'm not sure how the lead opinion could be "misperceived to require" anything that doesn't already exist, so I don't see what the danger here really is.

¶37 Second, once rule 404(c) has been satisfied, the question is what to do next. Here, Judge Mortensen repeatedly expresses his concern about the district court's observation that there was "enough" similarity between the various acts to render the other acts admissible. *Supra* ¶¶ 25, 27, 30, 32. Judge Mortensen cautions district courts against engaging in a comparative or "granular analysis of the similarities or differences between the charged conduct and the other-acts evidence." *Supra* ¶ 28. He opines that any "differences between the charged conduct and other acts of child molestation" would "not erode the probative value of the evidence," and he discourages district courts from focusing on anything beyond "the involvement of adults in sexual activities

with children in a broad sense." *Supra* ¶¶ 28, 30. I disagree with this approach as a matter of both law and logic.

¶38 Starting with the law, it's settled in Utah that "evidence of prior acts of child molestation admitted under rule 404(c) is still subject to rule 403's balancing test." *State v. Garcia*, 2022 UT App 77, ¶ 30, 526 P.3d 1238 (quotation simplified); *see also State v. Ring*, 2018 UT 19, ¶ 28, 424 P.3d 845 (same); *State v. Fredrick*, 2019 UT App 152, ¶ 43, 450 P.3d 1154 (same). Under rule 403, a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of" several listed things, one of which is "unfair prejudice." Utah R. Evid. 403. As indicated, rule 404(c) states that the other-acts evidence may be admissible "to prove a propensity to commit the crime charged." *Id.* R. 404(c)(1). Putting these rules together, what this means is that when a district court conducts a rule 403 balancing in a rule 404(c) case, the key differences are that (1) propensity is a permissible source of probative value and (2) propensity does not constitute a source of unfair prejudice. *See Fredrick*, 2019 UT App 152, ¶¶ 45–46.

¶39 As I see things, rule 404(c)'s allowance of evidence to show a "propensity to commit the crime charged," Utah R. Evid. 404(c)(1), naturally contemplates that there will be some examination of the degree of similarity between the various acts. To the extent that the acts in question are similar—whether it be in terms of the ages or genders of the victims, the type of acts involved, the circumstances, the timing, or anything else—the propensity-based probative value would naturally be heightened. To the extent that they're dissimilar, however, the probative value would naturally be weakened by some commensurate amount.

¶40 Of note, several Utah appellate decisions have done this exact kind of thing in cases that implicated rule 404(c), expressly considering the similarities or dissimilarities between the various incidents as part of the rule 403 inquiry. *See, e.g., Ring*, 2018 UT 19, ¶ 30; *State v. Cuttler*, 2015 UT 95, ¶ 24, 367 P.3d 981; *State v. Forbush*,

2024 UT App 11, ¶ 45, 544 P.3d 1, *cert. denied*, 550 P.3d 995 (Utah 2024); *Garcia*, 2022 UT App 77, ¶¶ 36–39. Thus, the approach taken by the district court below and the lead opinion in this appeal is entirely consistent with the approach to this rule that has previously been taken by both the Utah Supreme Court and this court. And since those cases treat similarity (or lack thereof) as being an appropriate part of the rule 403 balancing in a rule 404(c) case, I don't see why this couldn't be a meaningful part of the balancing depending on the circumstances of a particular case.[12]

¶41 In my mind, this approach also makes logical sense. To illustrate, consider the following scenario. Suppose that a defendant is charged with touching the breasts of a 13-year-old girl that he taught at school. Suppose that, before trial, the State expresses its intent to introduce evidence of two additional incidents: in the first, the defendant had allegedly touched the breasts of another 13-year-old girl that he taught at school that same year; in the second, the defendant had allegedly touched the penis of a toddler nephew at a family function many years earlier.

---

12. Judge Mortensen suggests that the rule 403 portion of this analysis should be focused on extraneous things, which he refers to as the "'technicolor details'" surrounding the actual acts in question, as opposed to the acts of molestation themselves. *Supra* ¶ 31 (quoting *State v. Fredrick*, 2019 UT App 152, ¶ 46, 450 P.3d 1154). I don't agree that our cases have drawn this line. To the contrary, in the cases I cited above, our courts expressly considered the incidents as a whole in the rule 403 analysis of a case that also involved rule 404(c)—i.e., the courts considered both the specific body parts allegedly touched by the defendant *and* such details as timing, the defendant's relationship to the victim, or other similar things. *See State v. Ring*, 2018 UT 19, ¶ 30, 424 P.3d 845; *State v. Cuttler*, 2015 UT 95, ¶ 24, 367 P.3d 981; *State v. Forbush*, 2024 UT App 11, ¶ 45, 544 P.3d 1, *cert. denied*, 550 P.3d 995 (Utah 2024); *State v. Garcia*, 2022 UT App 77, ¶¶ 36–39, 526 P.3d 1238.

Both incidents would pass the initial rule 404(c) inquiry because both involve acts of "child molestation." But when the district court then turns to the rule 403 balancing, I think it would be odd to suggest that the two incidents have identical probative values. True, the second incident may have some probative value because, like the charged offense, it involves an act of child molestation. But since the two incidents are being offered to prove "a *propensity* to commit *the crime charged*," Utah R. Evid. 404(c)(1) (emphases added), I think the first incident would be at least somewhat more probative of the defendant's propensity to touch the breasts of a 13-year-old girl than the second one, and this is so because it involves the same kind of touching against the same kind of victim in the same kind of circumstance. As I understand it, Judge Mortensen's contrary approach suggests that courts should assume that these acts have uniform probative value, and I just don't agree with that on the state of our current law or as a matter of logic.

¶42 Finally, Judge Mortensen expresses his concern that defendants will now "seek refuge" in what he regards as the "limitations" that I've endorsed here. *Supra* ¶ 30 n.9. I think what he means by this is that because I've acknowledged in this concurrence that a defendant may point to dissimilarities between the various acts in support of a motion to suppress—which, I'll note, is something recognized by the lead opinion too—my concurring opinion will give defendants new support for an argument that might lead to an unduly restrictive view of rule 403. But again, nothing in this approach is novel. It has already been used in past cases, which suggests that defendants were already well aware that they could make such arguments. Regardless, I'm not suggesting (and nor is the lead opinion) that the existence of dissimilarities will automatically lead to the exclusion of the evidence. Rather, as I understand the state of things, what happens is that once evidence clears the rule 404(c) hurdle, it's then subject to a rule 403 balancing. And as I've explained, even in the most dissimilar of cases, there will still be

at least some probative value, given that all of the acts in question involve acts of "child molestation." From there, it becomes a question of balancing, and we've recognized that this balancing remains within the "broad discretion" of the district court. *State v. Christian*, 2025 UT App 112, ¶ 28, 575 P.3d 293 (quotation simplified), *cert. denied*, 578 P.3d 751 (Utah 2025). I don't see anything amiss about trusting a district court to consider, as part of that balancing, any similarities or dissimilarities between the incidents as part of its assessment under rule 403. The sky hasn't fallen before, and I don't see anything in the lead opinion or mine that will cause it to fall now.

¶43    With these additional observations, I join the lead opinion.

───────────